**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MONOWISE LIMITED CORPORATION, *Plaintiff*, v. OZY MEDIA INC., and CARLOS WATSON, *Defendants.* | Civil Action No. **Jury Trial Demanded** |

### COMPLAINT

Plaintiff Monowise Limited Corporation ("MLC"), by and through its undersigned counsel, as and for its Complaint against Defendants, Ozy Media, Inc. ("OM"), and Carlos Watson ("CW") (OM and CW collectively referred to hereinafter as "Defendants" unless indicated otherwise), alleges as follows:

### NATURE OF THE CASE

1.      MLC owns the trademark "OZZFEST," which MLC uses as a famous brand for rock-music festivals and related merchandise.

2.      Without MLC's consent, Defendants use the "OZYFEST" word mark and logo (collectively, "Defendants' OZYFEST Marks" or "OZZFEST Marks") to promote a festival in New York, New York that includes rock music.

3.      Defendants' OZYFEST Marks are nearly identical in sight, sound, connotation, and commercial impression to MLC's well-known OZZFEST mark.

4.      Despite the striking similarities in the parties' marks, festivals, and customer bases, and MLC's protest, Defendants refuse to cease their infringing conduct.

1

5. Accordingly, MLC brings this action against Defendants for: (i) federal trademark infringement in violation of 15 U.S.C. § 1114(a); (ii) federal unfair competition in violation of 15 U.S.C. § 1125(a); (iii) federal trademark dilution in violation of 15 U.S.C. § 1125(c); (iv) trademark infringement in violation of New York common law; (v) trademark dilution in violation of N.Y. GEN. BUS. LAW § 360-*l*; (vi) unfair competition in violation of New York common law; and (vii) in the case of Defendant CW, vicarious trademark infringement in violation of the U.S. Trademark Act and New York common law.

6. As set forth *infra*, MLC prays for, *inter alia*: (i) an order permanently enjoining and restraining Defendants from using the OZYFEST Marks for any purpose whatsoever; (ii) an award of Defendants' ill-gotten gains from their unauthorized use of the OZYFEST Marks; (iii) an award of MLC's damages caused by Defendants' unlawful conduct complained of herein; and (iv) such further relief as this Court deems just and equitable.

## THE PARTIES

7. Plaintiff Monowise Limited Corporation is a United Kingdom corporation with a principal place of business at 89 New Bond Street, London, W1S 1DA, England.

8. On information and belief, Defendant Ozy Media, Inc. is a California corporation with a principal place of business at 404 Castro Street, Mountain View, California 94041.

9. On information and belief, Defendant Carlos Watson is a California resident with an address at 404 Castro Street, Mountain View, California 94041.

## JURISDICTION AND VENUE

10. The claims for federal trademark infringement, unfair competition, and trademark dilution asserted in Counts I-III, *infra*, respectively, arise under the Trademark Act of 1946 (as amended), namely, 15 U.S.C. §§ 1051 *et seq*. Therefore, this Court has subject matter and

original jurisdiction over Counts I-III pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a).

11.     The claims for trademark infringement, trademark dilution, and unfair competition asserted in Counts IV-VI, *infra*, arise under New York common and statutory law, and are so related to the federal claims asserted in Counts I-III, *infra*, that they form part of the same case or controversy.  Therefore, this Court has subject matter jurisdiction over Counts IV-VI pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

12.     The claim for vicarious trademark infringement asserted in Count VII, *infra*, arises under the Trademark Act of 1946 and New York common law, and is so related to the federal claims asserted in Counts I-III, *infra*, that it forms part of the same case or controversy. Therefore, this Court has subject matter jurisdiction over Count VII pursuant to 28 U.S.C. § 1367(a).

13.     This Court has personal jurisdiction over Defendant OM pursuant to § 302(a)(1) of the NEW YORK CIVIL PRACTICE LAW AND RULES.  On information and belief, Defendant OM transacts and solicits business on a regular, systemic, and continuous basis within the State of New York (including within this judicial district), and MLC's claims arise out of these transactions and solicitations of business.

14.     Alternatively, this Court has personal jurisdiction over Defendant OM pursuant to § 302(a)(2) of the NEW YORK CIVIL PRACTICE LAW AND RULES.  As discussed *infra*, Defendant OM has committed a tortious act within the State of New York (including within this judicial district), and MLC's claims arise out of this tortious act.

15.     This Court has personal jurisdiction over Defendant CW pursuant to § 302(a)(2) of the NEW YORK CIVIL PRACTICE LAW AND RULES because Defendant CW has the right and

NY01:4388498.1

ability to exercise control over and direct the activities of Defendant OM, which, as discussed *infra*, has committed a tortious act within the State of New York (including within this judicial district), and MLC's claims arise out of this tortious act.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because Defendants' wrongful acts and conduct, as discussed *infra*, occurred in substantial part in this judicial district.

17.     Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) because, as discussed *supra*, Defendants are subject to personal jurisdiction in this judicial district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**I.      MLC**

**A.      Ozzfest**

18.     For more than two decades, MLC has produced and conducted one of the world's most successful, critically acclaimed music festivals: "Ozzfest."

19.     Ozzy Osbourne is one of MLC's principals.

20.     Ozzy Osbourne has performed at the Ozzfest music festival more than any other musician or group.

21.     In addition to Ozzy Osbourne, such well-known music groups as Tool, System of a Down, Slipknot, Metallica, Linkin Park, Motley Crue, Foo Fighters, Rob Zombie, and Marilyn Manson have performed at the Ozzfest Music Festival.

22.     The Ozzfest music festival is one of the most well attended music festivals each year in the United States and Europe.

23.     In 2016, more than 45,000 individuals attended the Ozzfest Music Festival.

24.     In 2017, the Ozzfest music festival will take place in San Bernardino, California on November 4th.

**B.      MLC's Family of "OZZ" and "OZZY" Marks**

**1.      The OZZFEST Marks**

25.     For more than two decades, MLC has expended (and expends) substantial resources on producing, staging, advertising, marketing, and promoting throughout the world music festivals under its OZZFEST mark.

26.     MLC's OZZFEST mark is arbitrary when used for music festivals.

27.     MLC's OZZFEST mark is inherently distinctive.

28.     MLC's OZZFEST mark has been the subject of widespread, unsolicited media coverage and critical acclaim throughout the world, including in the United States.

29.     For example, over the past nearly two decades, MLC's OZZFEST mark and event have been prominently featured in such well-known television shows as *The Osbournes* and *Battle for Ozzfest* on MTV, *The Daily Show with Jon Stewart* on Comedy Central, and *My Name is Earl* on NBC.

30.     Because of MLC's extensive advertising, marketing, and promotional efforts, as well as the commercial success and widespread media coverage of its music festivals, consumers associate the mark OZZFEST uniquely with the OZZFEST event.

31.     MLC's OZZFEST mark has acquired distinctiveness and functions as a strong source identifier in the marketplace.

32.     MLC's OZZFEST mark is famous among the general consuming public by virtue of MLC's decades of use, MLC's extensive advertising, marketing, and promotional efforts, the

NY01:4388498.1

commercial success of the Ozzfest music festivals, and widespread media coverage of these festivals.

33.   MLC owns all right, title, and interest in and to its OZZFEST mark.

34.   The OZZFEST mark represents a valuable asset of MLC.

35.   No other entity uses the prefix "OZZ" or "OZZY" for music festivals or any other festival in the United States.

**2.    The OZZY, OZZY OSBOURNE, and OZZ RECORDS Marks**

36.   In addition to MLC's OZZFEST mark, MLC's family of OZZ and OZZY marks includes the following marks: (i) OZZY; (ii) OZZY OSBOURNE; and (iii) OZZ RECORDS (collectively, the "OZZ-formative Marks").

37.   The goods and services that MLC offers under its OZZ-formative Marks in the United States include, *inter alia*, key chains, watches, mugs, patches, video recordings, sound recordings, audio tapes, and clothing (collectively, the "OZZ-Brand Goods and Services").

38.   MLC has expended (and expends) substantial resources on advertising, marketing, and promoting its OZZ-Brand Goods and Services under its OZZ-formative Marks.

39.   MLC's OZZ-formative Marks are arbitrary when used for OZZ-Brand Goods and Services.

40.   MLC's OZZ-formative Marks are inherently distinctive.

41.   The OZZ-Brand Goods and Services offered under MLC's OZZ-formative Marks have been the subject of widespread, unsolicited media coverage and critical acclaim.

42.   Because of MLC's extensive advertising, marketing, and promotional efforts, as well as the commercial success and widespread media coverage of OZZ-Brand Goods and

NY01:4388498.1

Services, consumers associate the OZZ-formative Marks uniquely with the OZZ-Brand Goods and Services.

43.     MLC's OZZ-formative Marks have acquired distinctiveness and function as strong source identifiers in the marketplace.

44.     MLC's OZZ-formative Marks are famous among the general consuming public by virtue of MLC's decades of use, MLC's extensive advertising, marketing, and promotional efforts, the commercial success of OZZ-Brand Goods and Services, and widespread media coverage of OZZ-Brand Goods and Services.

45.     MLC owns all right, title, and interest in and to its OZZ-formative Marks.

46.     The OZZ-formative Marks represent valuable assets of MLC.

47.     In the course of using and protecting MLC's family of OZZFEST and OZZ-formative Marks, MLC has obtained the following U.S. Trademark Registrations relevant to the instant action:

| Mark | Registration No. | Registration Date | Int. Cls. |
|------|------------------|-------------------|-----------|
| OZZFEST | 2,334,692 (the "'692 Registration) | March 28, 2000 | 9 |
| OZZFEST | 2,331,282 (the "'282 Registration) | March 21, 2000 | 41 |
| OZZY | 4,826,119 (the "'119 Registration) | October 6, 2015 | 25 |
| OZZY | 4,562,348 (the "'348 Registration) | July 8, 2014 | 9 |
| OZZY | 2,921,920 (the "'920 Registration") | February 1, 2005 | 4; 6; 9; 14; 16; 21; 26; and 41 |
| OZZY OSBOURNE | 4,554,378 | June 24, 2014 | 41 |

NY01:4388498.1

| | | | |
|---|---|---|---|
| | (the "'378 Registration") | | |
| OZZY OSBOURNE | 2,690,340 (the "'340 Registration") | February 25, 2003 | 6; 9; 14; 16; 21; 25; and 28 |
| OZZ RECORDS | 2,376,625 (the "'625 Registration") | August 15, 2000 | 9 |

48.     Attached hereto as Exhibits 1-8 are true and correct copies of the '692, '282, '119, '348, '920, '378, '340, and '625 Registrations, respectively.

49.     The '692, '282, '119, '348, '920, '378, '340, and '625 Registrations, respectively, are in effect, valid, and subsisting.

50.     The '692, '282, '920 and '340 Registrations, respectively, are incontestable within the meaning of 15 U.S.C. § 1065.

51.      Since the '692, '282, '119, '348, '920, '378, '340, and '625 Registrations, respectively, issued, MLC has continuously offered in United States commerce the goods and services identified in these Registrations under the marks set forth therein.

**II.     Defendants' Unlawful Conduct**

    **A.     The 2016 Version of Defendants' Festival**

52.     Defendants titled the 2016 version of their festival: "Ozy Fusion Fest 2016."

53.     On July 12, 2016, *People* magazine posted an article on its website about Ozy Fusion Fest 2016 (the "July 2016 Article").

54.     The first sentence of the July 2016 Article states: "[n]o, this is not a heavy metal festival featuring Ozzy Osbourne […]."  Exhibit 9.

55.     Upon information and belief, the author of the July 2016 Article included this statement because the author believed that consumers were likely to associate Ozy Fusion Fest 2016 with MLC, Ozzy Osbourne, and/or the Ozzfest music festivals

8

**B.      The 2017 Version of Defendants' Festival**

56.      Defendants removed "Fusion" from the title of their 2017 festival, titling it simply "Ozy Fest."

57.      This festival took place in Central Park in New York City in July 2017. Defendants promoted and advertised this festival in interstate commerce.

58.      Defendants promote their Ozy Fest event in part, under the following logo:



("Defendants' OZYFEST Logo")

59.      Defendants' OZYFEST Logo consists of psychedelic imagery, which consumers associate with rock music.

60.      On information and belief, Defendants intentionally use brightly colored ink blots and paint splatter in their OZYFEST Logo to create psychedelic imagery, and for the express purpose of impressing upon consumers that Defendants' festival includes rock music, just like MLC's OZZFEST event.

61.      Defendants' Ozy Fest festival included performances by musicians such as: Yuna; Talib Kweli; Zara Larsson; and Jason Derulo.

62.      Consumers view Defendants' OZYFEST Logo as containing one word, "OZYFEST."

63.      Consumers pronounce Defendants' OZYFEST Marks as one word, *i.e.*: O-Z-Y-F-E-S-T.

NY01:4388498.1

64.     OZYFEST is nearly identical in sight, sound, connotation, and commercial impression to MLC's family of OZZFEST and OZZ-formative Marks (including, in particular, MLC's OZZFEST mark).

65.     "OZY" is the dominant portion of Defendants' OZYFEST Marks.

66.     "OZZ" and "OZZY" are the dominant portions of MLC's family of OZZFEST and OZZ-formative Marks.

67.     OZY, OZZ, and OZZY are nearly identical in sight sound, connotation, and commercial impression.

68.     The festival that Defendants offer and promote under Defendants' OZYFEST Marks include rock music.

69.     MLC's goods and services offered under its family of OZZFEST and OZZ-formative Marks appeal to, *inter alia*, fans of rock music.

**III.    MLC's Efforts to Resolve this Dispute**

70.     MLC diligently polices the marketplace and trademark registries for unauthorized marks and other designations that are identical or colorable imitations of its famous Family of OZZFEST and OZZ-formative Marks.

71.     Shortly after learning of Defendants' use of Defendants' OZYFEST Marks to promote their July 2017 event in New York City's Central Park, MLC's counsel sent a cease-and-desist letter to Defendants on June 27, 2017 (the "June 27 Demand Letter").  A true and correct copy of the June 27 Demand Letter is attached hereto as Exhibit 10.

72.     On July 20, 2017, Defendants' counsel responded to MLC's June 27 Demand Letter, denying there was any likelihood of confusion based on the position that, *inter alia*, Ozy

Fest is allegedly a "media-focused event" (the "July 20 Letter").  A true and correct copy of the July 20 Letter is attached hereto as Exhibit 11.

73.     Contrary to the representation in Defendants' July 20 Letter that Ozy Fest is a "media-focused event," Defendants' website prominently describes Ozy Fest as an "all-day party" that "brings together incredible music [...]."

74.     Despite the representation in Defendants' July 20 Letter that Ozy Fest is a "media-focused event," Defendants' website uses videos of live music performances to promote interest in Ozy Fest.

75.     Despite MLC's continued efforts to resolve this dispute, Defendants refuse to cease using their OZYFEST Marks.  *See* Exhibit 12. (Letter dated August 11, 2017 from Defendants' counsel)

76.     As described *supra*, Defendants have used and are continuing to knowingly and willfully use their OZYFEST Marks to advertise, market, and promote their festival, in contumacious disregard of MLC's valuable intellectual property rights.

## CLAIMS FOR RELIEF

### COUNT I
*(Federal Trademark Infringement Under 15 U.S.C. § 1114)*
*(Against All Defendants)*

77.     MLC incorporates paragraphs 1-76 of the Complaint as though set forth fully herein.

78.     Count I is for federal trademark infringement in violation of 15 U.S.C. § 1114.

79.     MLC's family of OZZFEST and OZZ-formative Marks are inherently distinctive.

80.     MLC's family of OZZFEST and OZZY-formative Marks have acquired distinctiveness because consumers associate them uniquely with the famous OZZFEST music events, and MLC's OZZ-Brand Goods and Services, offered thereunder.

81.     Defendants' use of their OZYFEST Marks is likely to cause consumers to mistakenly believe that the source of Defendants' OZZYFEST event is the same as the source of the MLC's famous OZZFEST events, and the other goods and services sold in connection with MLC's family of OZZFEST and OZZ-formative Marks; that the event provided under the OZYFEST Marks is licensed, sponsored, endorsed, approved, or authorized by the organizer of the famous OZZFEST events and the source of the other goods and services sold in connection with MLC's family of OZZFEST and OZZ-formative Marks; and/or that the event provided under the OZYFEST Marks is associated or affiliated with, or is connected to, MLC's famous OZZFEST events, and the other goods and services sold in connection with MLC's family of OZZFEST and OZZ-formative Marks (or vice versa).

82.     Defendants' use of theirOZYFEST Marks is causing, and is likely to continue causing, consumers to mistakenly believe that Defendants are the source of OZZ-Brand Goods and Services; that Defendants are licensed, sponsored, endorsed, approved, or authorized by the source of OZZ-Brand Goods and Services; and/or that the OZZYFEST event is associated or affiliated with, or is connected to, OZZ-Brand Goods and Services (or vice versa).

83.     Upon information and belief, Defendants adopted and use the confusingly similar OZYFEST Marks in furtherance of their willful, deliberate, and bad faith efforts to trade on the extensive consumer goodwill and recognition that MLC has developed and established in its family of OZZFEST and OZZ-formative Marks (including, in particular, MLC's OZZFEST

mark itself), and MLC's OZZFEST events and OZZ-Brand Goods and Services offered thereunder.

84.     Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from their use of the confusingly similar OZYFEST Marks, to which they are not entitled in law or equity.

85.     Upon information and belief, Defendants' acts and conduct complained of herein constitute federal trademark infringement in violation of 15 U.S.C. § 1114.

86.     MLC has suffered, and will continue to suffer, irreparable harm from Defendants' uses of the confusingly similar OZYFEST Marks unless restrained by law.

87.     MLC has no adequate remedy at law.

## **COUNT II**
*(Unfair Competition Under 15 U.S.C. § 1125(a))*
*(Against All Defendants)*

88.     MLC incorporates paragraphs 1-87 of the Complaint as though set forth fully herein.

89.     Count II is for federal unfair competition in violation of 15 U.S.C. § 1125(a).

90.     Upon information and belief, Defendants' acts and conduct complained of herein constitute unfair competition in violation of 15 U.S.C. § 1125(a).

91.     MLC has suffered, and will continue to suffer, irreparable harm from Defendants' uses of the confusingly similar OZYFEST Marks unless restrained by law.

92.     MLC has no adequate remedy at law.

NY01:4388498.1

**COUNT III**
*(Federal Trademark Dilution Under 15 U.S.C. § 1125(c))*
*(Against All Defendants)*

93.     MLC incorporates paragraphs 1-92 of the Complaint as though set forth fully herein.

94.     Count III is for federal trademark dilution in violation of 15 U.S.C. § 1125(C).

95.     MLC's family of OZZFEST and OZZ-formative Marks are famous among the general consuming public.

96.     MLC's family of OZZFEST and OZZ-formative Marks were famous before Defendants began using their OZYFEST Marks.

97.     MLC's family of OZZFEST and OZZ-formative Marks are inherently distinctive.

98.     MLC's family of OZZFEST and OZZ-formative Marks have acquired distinctiveness because consumers associate them uniquely with MLC's OZZFEST Festivals, and MLC's OZZ-Brand of Goods and Services offered thereunder.

99.     Defendants' use of the OZYFEST Marks is likely to dilute the distinctive quality of MLC's family of OZZFEST and OZZ-formative Marks (including, in particular, MLC's OZZFEST mark) such that MLC's family of OZZFEST and OZZ-formative Marks' established selling power and value, as well as their ability to function as exclusive indicators of MLC's well-known OZZFEST events and OZZ-Brand Goods and Services, respectively, will be whittled away.

100.    Upon information and belief, Defendants adopted and use the OZYFEST Marks in furtherance of their willful, deliberate, and bad faith efforts to trade on the extensive consumer goodwill and recognition that MLC has developed and established in its family of OZZFEST and

OZZ-formative Marks (including, in particular, MLC'S OZZFEST mark), and MLC's OZZFEST festivals and OZZ-Brand Goods and Services offered thereunder.

101.     Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from their use of the OZYFEST Marks, to which they are not entitled in law or equity.

102.     Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(C).

103.     MLC has suffered, and will continue to suffer, irreparable harm from Defendants' uses of the OZYFEST Marks unless restrained by law.

104.     MLC has no adequate remedy at law.

## COUNT IV
*(Trademark Infringement Under New York Common Law)*
*(Against All Defendants)*

105.     MLC incorporates paragraphs 1-104 of the Complaint as though set forth fully herein.

106.     Count IV is for trademark infringement in violation of New York common law.

107.     Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark infringement in violation of New York common law.

108.     MLC has suffered, and will continue to suffer, irreparable harm from Defendants' uses of the confusingly similar OZYFEST Marks unless restrained by law.

109.     MLC has no adequate remedy at law.

NY01:4388498.1

<u>**COUNT V**</u>
*(Trademark Dilution Under N.Y. GBL § 360-l)*
*(Against All Defendants)*

110.    MLC incorporates paragraphs 1-109 of the Complaint as though set forth fully herein.

111.    Count V is for trademark dilution in violation of N.Y. GBL § 360-*l*.

112.    MLC's family of OZZFEST and OZZ-formative Marks are inherently distinctive.

113.    MLC's Family of OZZ and OZZY Marks have acquired distinctiveness because consumers associate them uniquely with MLC's OZZFEST events, and MLC's OZZ-Brand Goods and Services, offered thereunder.

114.    Defendants' use of the OZYFEST Marks to advertise, market, and promote their OZYFEST event is likely to dilute the distinctive quality of MLC's family of OZZFEST and OZZ-formative Marks (including, in particular, MLC's OZZFEST mark) such that MLC's family of OZZFEST and OZZ-formative Marks' established selling power and value, as well as their ability to function as exclusive indicators of MLC's well-known OZZFEST and OZZ-Brand Goods and Services, respectively, will be whittled away.

115.    Upon information and belief, Defendants adopted and use the OZYFEST Marks in furtherance of their willful, deliberate, and bad faith efforts to trade on the extensive consumer goodwill and recognition that MLC has developed and established in its family of OZZFEST and OZZ-formative Marks (including, in particular, MLC's OZZFEST mark), and the OZZFEST festivals and OZZ-Brand Goods and Services that MLC offers thereunder.

116.    Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from their uses of the OZYFEST Marks, to which they are not entitled in law or equity.

NY01:4388498.1

117.    Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark dilution in violation of N.Y. GBL § 360-*l*.

118.    MLC has suffered, and will continue to suffer, irreparable harm from Defendants' uses of the OZYFEST Marks unless restrained by law.

119.    MLC has no adequate remedy at law.

### COUNT VI
(*Unfair Competition Under New York Common Law*)
(*Against All Defendants*)

120.    MLC incorporates paragraphs 1-119 of the Complaint as though set forth fully herein.

121.    Count VI is for unfair competition in violation of New York common law.

122.    MLC has expended, and continues to expend, substantial labor, skill, and investment to advertise, market, and promote its OZZFESTevents under its OZZFEST marks.

123.    MLC has expended, and continues to expend, substantial labor, skill, and investment to advertise, market, and promote its OZZ-Brand Goods and Services under its Family of OZZFEST and OZZ-formative Marks.

124.    Upon information and belief, Defendants adopted and use the confusingly similar OZYFEST Marks in furtherance of their willful, deliberate, and bad faith efforts to sow consumer confusion and pass off their festival as an OZZFEST festival.

125.    Upon information and belief, Defendants adopted and use the confusingly similar OZYFEST Marks in furtherance of their willful, deliberate, and bad faith efforts to sow consumer confusion and pass off OZZFEST as having an association or affiliation with MLC's OZZFEST Events and OZZ-Brand Goods and Services.

NY01:4388498.1

126.   Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from their use of the confusingly similar OZYFEST Marks, to which they are not entitled in law or equity.

127.   Upon information and belief, Defendants' acts and conduct complained of herein constitute unfair competition in violation of the common law of the State of New York.

128.   MLC has suffered, and will continue to suffer, irreparable harm from Defendants' uses of the confusingly similar OZYFEST Marks unless restrained by law.

129.   MLC has no adequate remedy at law.

**COUNT VII**
*(Vicarious Trademark Infringement)*
*(Against Defendant CW)*

130.   MLC incorporates paragraphs 1-129 of the Complaint as though set forth fully herein.

131.   Count VII is for vicarious trademark infringement against Defendant CW in violation of the U.S. Trademark Act and New York common law.

132.   Defendant OM is committing direct trademark infringement, unfair competition and trademark dilution in violation of the U.S. Trademark Act and New York law by using the confusingly similar OZYFEST Marks to advertise, market, and promote its festivals.

133.   Upon information and belief, Defendant CW wholly and/or partially owns and controls Defendant OM.

134.   Upon information and belief, Defendant CW has: (i) the right and ability to exercise control over Defendant OM's activities; (ii) a direct financial interest in Defendant OM; and  the authority to bind Defendant OM in transactions with third parties.

135.    Upon information and belief, Defendant CW has made, and will continue to make, substantial profits and gain from uses of the confusingly similar OZYFEST Marks.

136.    Upon information and belief, Defendant CW's acts and conduct complained of herein render him vicariously liable under the U.S. Trademark Act and New York law for Defendant OM's activities complained of herein.

137.    MLC has suffered, and will continue to suffer, irreparable harm from Defendants' uses of the OZYFEST Marks unless restrained by law.

138.    MLC has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, MLC prays for judgment against Defendants as follows:

A.    A Declaration that Defendants have infringed, diluted, violated, and/or otherwise damaged or injured each mark within MLC's family of OZZFEST and OZZ-formative Marks, and all Registrations cited herein;

B.    An Order permanently enjoining and restraining Defendants, their parents, subsidiaries, divisions, branches, affiliates, predecessors or successors-in-interest, and any persons or entities acting or purporting to act for or on behalf of any of the foregoing, including any agents, employees, representatives, officers, directors, shareholders, servants, and partners, and those persons in active concert or participation with them, from using the OZYFEST Marks (and any other name, word, term, symbol, device, logo, or combination of the foregoing that is confusingly similar to, or dilutive of any mark within MLC's family of OZZFEST and OZZ-formative Marks) for any purpose whatsoever;

C.     An Order directing Defendants to remove the OZYFEST Marks (and any colorable imitation(s) thereof) from all web sites, advertisements, and promotional materials, whether electronic, printed or otherwise, under Defendants' direct or indirect dominion or control;

D.     An Order, pursuant to 15 U.S.C. § 1118, directing the seizure, delivery, and destruction of each item within Defendants' possession, custody, or control that infringes, dilutes, or violates any mark within MLC's family of OZZFEST and OZZ-formative Marks;

E.     An Order requiring Defendants to account for and pay over to MLC: (i) all profits derived by Defendants from their acts complained of herein, and (ii) all damages sustained by MLC as a result of Defendants' acts complained of herein, in amounts to be determined at trial;

F.     A Declaration that this case is "exceptional" within the meaning of 15 U.S.C. § 1117,  and awarding MLC its reasonable costs and attorneys' fees based thereon;

G.     An Order awarding MLC treble damages, punitive damages, and treble profits;

H.     An Order awarding MLC pre and post-judgment interest; and

An Order awarding MLC such further relief as this Court deems just and equitable.

NY01:4388498.1

### JURY DEMAND

Pursuant to Rules 38(b) and 38(c) of the Federal Rules of Civil Procedure, MLC requests

a trial by jury for all issues so triable.

Dated: October 18, 2017
New York, New York                    Respectfully submitted,


/s/ *Howard J. Shire*
Howard J. Shire
Jonathan W. Thomas
ANDREWS KURTH KENYON LLP
One Broadway
New York, New York 10004
Tel.: (212) 425-7200
Fax: (212) 425-5288
Email: hshire@kenyon.com
Email: jthomas@kenyon.com

*Attorneys for Plaintiff*
*Monowise Limited Corporation*

21