**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

MONOWISE LIMITED,

                    *Plaintiff*,

          v.

OZY MEDIA, INC. and CARLOS WATSON,

                    *Defendants.*

Case No. 17-cv-8028 (LAK)(JLC)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF
<u>MONOWISE LIMITED'S PRELIMINARY-INJUNCTION MOTION</u>**

**TABLE OF CONTENTS**

Page

I.    Preliminary Statement…………………………………………………………………...1

II.   Analysis…………………………………………………………………………………...1

   A.   ML is Likely to Succeed on its Trademark and Unfair Competition Claims………..1

   B.   ML is Likely to Succeed on its New York Trademark Dilution Claim………………7

   C.   ML Will Suffer Irreparable Harm in the Absence of an Injunction…………………8

   D.   ML Did Not "Delay" in Seeking Injunctive Relief……………………………………10

   E.   The Balance of Hardships Tips Decidedly in Favor of Issuing an
       Injunction……………………………………………………………………………12

   F.   Issuing an Injunction Will Serve the Public Interest…………………………………13

III.  Conclusion………………………………………………………………………………13

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alzheimer's Foundation of America, Inc. v.*
*Alzheimer's Disease and Related Disorders Association, Inc.,*
2015 WL 4033019 (S.D.N.Y., June 29, 2015)……………………………………………9

*Barefoot Contessa Pantry, LLC v. Aqua Star (USA) Co.,*
2015 WL 845711 (S.D.N.Y., Feb. 26, 2015)……………………………………………8,9

*Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281 (S.D.N.Y. 2003)……………………………..7

*Citigroup Inc. v. AT&T Services, Inc.*, 2016 WL 4362206 (S.D.N.Y., Aug. 11, 2016)…………..9

*CSI Entm't v. Anthem Media Grp., Inc.,*
2016 U.S. Dist. LEXIS 180749 (E.D.N.Y. Dec. 30, 2016)…………………………………9

*E. Gluck Corp. v. Rothenhaus*, 585 F. Supp. 2d 505 (S.D.N.Y. 2008)………………………….2

*Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc.,*
2016 WL 4367990 (S.D.N.Y., Aug. 12, 2016)…………………………………………12,13

*Harold Ritchie, Inc. v. Chesebrough-Pond's Inc.*, 281 F.2d 755 (2d Cir. 1960)…………………5

*Grotrian, et al. v. Steinway & Sons*, 523 F.2d 1331 (2d Cir. 1975)………………………………3

*Hearst Bus. Publ'g, Inc. v. W.G. Nichols, Inc.*, 76 F. Supp. 2d 459 (S.D.N.Y. 1999)…………...11

*Katz v. Modiri*, 282 F. Supp. 2d 883 (S.D.N.Y. 2003)………………………………………7

*Lexington Management Corp. v. Lexington Capital Partners,*
10 F. Supp.2d 271, (S.D.N.Y. 1998)……………………………………………………12

*Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532 (2d Cir. 2005)…………..3

*Microban Prods. Co. v. API Indus., Inc.,* 2014 WL 1856471 (S.D.N.Y. May 8, 2014)…………9

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254 (2d Cir. 1987)……………………...3

*Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.,*
414 F. Supp. 2d 414 (S.D.N.Y. 1980)…………………………………………………...10

*SMJ Group, Inc. v. Lafayette Restaurant LLC,*  439 F. Supp. 2d 281 (S.D.N.Y. 2006)…………..3

*Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141 (2d Cir. 2005)…………………………….4

## I.    Preliminary Statement

Defendants have tried to obfuscate what is a straightforward case of trademark infringement.  Plaintiff Monowise Limited ("ML" or "Plaintiff") owns the well-known mark OZZFEST, which it has used since 1996.  The OZZFEST registration (Reg. No. 2,331,282) is incontestable under the U.S. Trademark Act and, therefore, constitutes conclusive evidence that ML owns the exclusive right to use OZZFEST for the registered services, which include, *inter alia*, "live performances featuring music," and to prevent others from using any mark that is likely to cause confusion with OZZFEST.  Defendants undisputedly use OZYFEST, which is virtually identical to OZZFEST, to present the same services, namely "live performances featuring music."  It is difficult to imagine a more clear-cut case of infringement.

## II.    Analysis

### A.  ML is Likely to Succeed on its Trademark and Unfair Competition Claims

Defendants' Opposition does not address the first element of ML's trademark infringement and unfair competition claims, *i.e.* ownership of a valid mark that is entitled to protection.  *See generally* ECF No. 39; *see also* ECF No. 31-1 at 15 (ML citing the standards for these claims).  Nonetheless, ML is likely to prove this element for two reasons: (i) it owns federal trademark registrations for each of its marks, and (ii) the '692 and '282 registrations for ML's OZZFEST mark; the '920 registration for ML's OZZY mark; and the '340 registration for ML's OZZY OSBOURNE mark are incontestable within the meaning of 15 U.S.C. § 1065.  *See* ECF No. 31-1 at 15-6.

Moreover, courts use the eight, well-known *Polaroid* factors when evaluating the second element, a likelihood of confusion.  *See* ECF No. 31-1 at 16.

### 1.   First *Polaroid* Factor

Courts measure a mark's conceptual and commercial strength.  *See* ECF No. 31-1 at 10-11.  A mark is conceptually strong if it is inherently distinctive. *See id*. at 11-12.  The parties concur that ML's marks are inherently distinctive.  *Compare* ECF No. 31-1 at 17-8 (ML explaining why its marks are arbitrary and, thus, inherently distinctive*) with* ECF No. 39 at 20 (Defendants stating "[a]t best, Plaintiff's marks are suggestive of their services"; a suggestive mark is inherently distinctive).

ML's marks are commercially strong as a matter of law because they are incontestable. *See* ECF 31-1 at 19.  Contrary to Defendants' assertions, ML has produced more than 2,500 unsolicited articles and press clippings concerning ML's OZZFEST event.  *See* Guarracino Decl. at ¶ 11.  Defendants also claim ML's OZZFEST mark is commercially weak because third parties allegedly use the prefix OZ for music.  *See* ECF No. 39 at 20.  However, these marks, when considered in their respective entireties ("Ozzdi" and "Ozo"), are scarcely confusingly similar to OZZFEST, unlike Defendants' OZYFEST mark.  In addition, Defendants do not allege that any third party uses marks with the prefix OZ for music festivals and/or festivals that include rock music.  *See generally* ECF Nos. 39-41.  In fact, ML is not aware of any other party offering an event that includes rock music, or any other music for that matter, under the mark OZZFEST or anything similar thereto.  *See* ECF No. 31-1 at 20.

### 2.   Second *Polaroid* Factor

Defendants claim the parties' marks are different because their logos are allegedly different.  *See* ECF No. 39 at 22-24.  Defendants, however, miss a crucial point: "it is a settled principle of trademark law that the dominant portion of a mark may be given extra weight on the issue of likelihood of confusion."  *E. Gluck Corp. v. Rothenhaus*, 585 F. Supp. 2d 505, (S.D.N.Y. 2008).  Here, the dominant portions of the parties' logos are the word marks OZZFEST and

OZYFEST, which sound nearly identical. *See* ECF No. 31-1 at 20-21. What is more, consumers are encountering the nearly identical sounding OZYFEST mark in the context of a festival that includes music—just as they encounter ML's OZZFEST mark. Defendants' use of a nearly identical sounding mark for services that consumers have long associated with ML and ML's OZZFEST event is likely to cause confusion--especially initial interest confusion. *See, e.g.*, *Grotrian, et al. v. Steinway & Sons*, 523 F.2d 1331, 1339-1340 (2d Cir. 1975) (*accord*).

As background, it is well settled that "[t]he Lanham Act protects against several types of consumer confusion, including *point-of-sale confusion*, *initial interest confusion*, and *post-sale* confusion, and the *Polaroid* factors must be applied with an eye towards each of these" types of likely confusion. *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 n.2 (2d Cir. 2005). (internal citations omitted). (emphasis in original).

The "[initial interest] doctrine states that confusion exists for purposes of the Lanham Act when potential customers are initially attracted to the junior user's mark by virtue of its similarity to the senior user's mark, even though these consumers are not actually confused at the time of purchase." *SMJ Group, Inc. v. Lafayette Restaurant LLC*, 439 F. Supp. 2d 281, 288 (S.D.N.Y. 2006); *see also Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259-60 (2d Cir. 1987) (*accord*); *see also* ECF No. 1-11 at 3 (ML explaining to Defendants' counsel why a likelihood of initial interest confusion exists in this case). Thus, even if consumers were to ultimately realize that ML is not the source of Defendants' OZYFEST event, they are likely to be initially interested in, and confused about the source of, Defendants' event based on use of the nearly identical sounding mark OZYFEST for services that consumers have long associated with ML's OZZFEST event.

### 3.   Third *Polaroid* Factor

Defendants contend that, because their festival includes events other than music, the parties are not competitive.  *See* ECF No. 39 at 24-6.   However, consumers have long been accustomed to, and attended, music festivals offered under ML's well-known OZZFEST mark. Thus, when consumers first learn of Defendants' festival, which includes music, with musical groups prominently featured under the confusingly similar OZYFEST mark (Guarracino Decl. at ¶9), they are likely to at least initially believe that since both festivals include music, they emanate from the same source.  *See* ECF No. 31-1 at 22 (referencing *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 150 (2d Cir. 2005) ("[T]he closer the secondary user's goods are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source").

### 4.   Fourth *Polaroid* Factor

Defendants claim this factor favors them because they do not offer, and do not intend to offer, rock music.  *See* ECF No. 39 at 26.   This argument is factually inaccurate, since Defendants do provide rock music, and other genres of music that have been performed at OZZFEST.   *See* Guarracino Decl. at ¶¶ 8-9.   They also conveniently ignore that ML's incontestable registration for OZZFEST encompasses "live performances featuring music," not just one specific genre of music.   Accordingly, there is no proverbial bridge to gap, rendering this factor neutral.

### 5.   Fifth *Polaroid* Factor

Actual confusion exists based on evidence of: (i) confusion on social media during Defendants' 2017 OZYFEST event, and (ii) Internet search results[1].  *See* ECF No. 31-1 at 23.

---

[1] Defendants also ignore the fact the individuals frequently use the  marks at issue in ordinary text, without reference to logos or different typefaces, which results in mistakes.  For example, Mr. Rao mistakenly refers to "the heavy

Nonetheless, if the Court finds this is not evidence of actual confusion, actual confusion is not required to prove a likelihood of confusion. *See id*. at 22-23. Moreover, Defendants have publicly advertised or promoted their OZYFEST event for only a limited period of time; only about four months in 2017 and less than two months so far in 2018. Lack of actual confusion during this brief period is scarcely probative of a likelihood of confusion. *See Harold Ritchie, Inc. v. Chesebrough-Pond's Inc*., 281 F.2d 755, 761 (2nd Cir. 1960).

### 6. Sixth *Polaroid* Factor

Defendants do not claim to have conducted a trademark search for the mark at issue in this case, namely OZYFEST for live music performances; instead, Defendants claim they searched for the mark OZY, and even then did not search for music and festival services, but rather searched for "online news publications; news and entertainment website; online newspaper." *See generally* ECF Nos. 39-41; ECF No. 41-2 at 2. Nor do Defendants claim they ever applied to register OZYFEST for music festivals (if they had, ML would have opposed it). *See id*. Defendants also cannot rely on their registration for OZY as evidence of their alleged good faith. Even a cursory review establishes that, unlike Plaintiff's registrations, Defendants' registration does *not* cover music or music festivals. *See* ECF No. 41 at 41-1 at 1-4.

Moreover, Defendants admit they were "aware of Ozzy Osbourne and Ozzfest" before hosting their first festival. ECF No. 39 at 29. Defendants have taken numerous steps to highlight the musical-aspects of their festival, especially in 2018, which are creating a likelihood of confusion with ML. *See* ECF No. 31-2 at ¶¶ 58-76; *see also* Guarracino Decl. at ¶¶ 7-9.

For example, Defendants' tagline emphasizes to consumers that Defendants' OZYFEST includes music. Defendants claim they have used the tagline "Think.Eat.Rock" consistently

---

metal Ozyfest music festival" (using his company's mark in place of ML's mark), and also mistakenly refers to ML's event as "Ozfest." ECF No. 41 at ¶ 21.

since 2016, and that supposedly emphasizing "Think" proves they are not highlighting the musical aspects of their festival. *See* ECF No. 39 at 29. That is demonstrably false—and Defendants know it. As shown in ML's Opening Brief, Defendants used the tagline "ROCK.THINK.EAT" to promote their OZYFEST event in 2017. *See* ECF No. 31-2 at ¶ 75. If "think" was the dominant feature of Defendants' festival, one cannot help but wonder why they placed "ROCK" *first* in their tagline.

Defendants also claim, albeit without any support, they are using the "rock" hand gesture because it suggests having fun. ECF No. 41 at ¶37. Defendants' argument rings hollow. Images of people dancing would also "suggest having fun," but Defendants did not select that imagery; Defendants selected the "rock" hand gesture, which consumers universally associate with rock music, including using it for such purpose at Plaintiff's OZZFEST event. *See* ECF No. 31-2 at ¶¶ 67-71, Guarracino Decl. at ¶¶ 5-6 and Ex. 2.

Finally, consumers associate bat logos and imagery with ML. *See* ECF No. 31-1 at 24; *see also* 31-2 at ¶¶ 59-61. Even if Defendants adopted the bat logo for Halloween (*see* ECF No. 39 at 30), their argument misses the bigger point: this factor, like all of the *Polaroid* factors, assesses the likelihood of confusion. Defendants' bat logo is widely available to the public on a page titled "OZY FEST 2017," and includes a picture of Ozzy Osbourne. *See* ECF No. 31-2 at ¶¶ 62-3. Put simply, it is hard to fathom more direct, concrete evidence of consumers associating Defendants' OZYFEST event with Plaintiff.

### 7. Seventh *Polaroid* Factor

Defendants claim this factor favors them because their festival allegedly receives "high praise" in the media. *See* ECF No. 39 at 30-1. However, the cited evidence concerning the 2017 OZYFEST is quite thin—only two articles. Ongoing discovery could well establish issues with the quality of Defendants' festival. Importantly, the overarching issue is that ML should not

have to risk putting its reputation in Defendants' hands.  Therefore, even if there were no known quality issues concerning the 2017 OZYFEST event, Plaintiff should not have to worry if that will be the case in 2018, when it has no control over the event's quality.

### 8.  Eighth *Polaroid* Factor

Defendants gratuitously posit that "any purchase for more than $10 dollars involves consumer care in purchasing."  ECF No. 39 at 31.   Thus, according to Defendants, because "[t]ickets to Ozy Fest range from $55 to $255 and tickets to Ozzfest range from $29 to $499," it must be true that consumers exercise a high degree of care when purchasing festival tickets.  *See id*.   However, as Defendants' case law confirms, when consumers exercise a high degree of purchasing care for inexpensive products, it is because such products affect, for example, the consumer's health and wellness.  *See Katz v. Modiri*, 282 F. Supp. 2d 883, 898 (S.D.N.Y. 2003)[2].

Here, the parties offer live music and festivals.  These events, however, do not affect consumers' health and wellness; rather, they are leisurely forms of entertainment.  This fact, combined with the inexpensive price of the parties' festival tickets, demonstrates that consumers are unlikely to exercise care when purchasing the tickets.  *See* ECF No. 31-1 at 26-7.

For the reasons discussed above, and in ML's Opening Brief, all seven of the relevant *Polaroid* factors weigh heavily in ML's favor.

### B.  ML is Likely to Succeed on its New York Trademark Dilution Claim

Defendants claim that ML is not likely to succeed on the merits of its trademark-dilution claim because ML allegedly fails to prove: (i) its OZZYFEST mark is strong, and (ii) a likelihood of dilution by blurring.  *See* ECF No. 39 at 32-2.  Both arguments fail.  A mark is strong if it has acquired secondary meaning.  *See* ECF No. 31-1 at 27.  Here, ML's OZZFEST

---

[2] Defendants' reliance on *Brockmeyer v. Hearst Corp.*, is misplaced.  Unlike here, in *Brockmeyer*, the defendant's consumer survey showed confusion was unlikely when purchasing defendant's 'relatively expensive' magazine. 248 F. Supp. 2d 281, 299 (S.D.N.Y. 2003).

mark has acquired secondary meaning as a matter of law because it is incontestable.  *See id*. at 19.  ML has also proven--at an early stage of this litigation--that its OZZFEST event has generated a quarter of a *billion* dollars in revenue, and has received extensive nationwide, unsolicited media coverage on a regular basis for more than two decades.  *See id*; *see also* Guarracino Decl. at ¶ 11 (explaining that ML "produced over 2,500 articles,"  including over 500 articles since 2010, clearly illustrating the tremendous amount of unsolicited media coverage OZZFEST concerts receive.

Equally meritless is Defendant's argument that ML fails to prove a likelihood of dilution by blurring.  *See* ECF No. 39 at 39.  Contrary to Defendants' assertions, all six factors that are relevant to the Court's likelihood-of-dilution-by-blurring analysis favor ML: (i) the parties' marks are nearly identical; (ii) the parties offer festivals that include music--rock music in particular; (iii) consumer sophistication is low; (iv) Defendants adopted the mark OZYFEST in bad faith; and (v) ML's OZZFEST mark has acquired distinctiveness.  The final factor favors ML, too.  Indeed, Defendants cite to less than a dozen articles concerning their OZYFEST event to support the proposition that OZYFEST "has been widely covered in the media."  ECF No. 39 at 33.  This pales in comparison to ML, which, as discussed above, has produced over *2,500* unsolicited articles so far concerning its OZZFEST events.

## C.  ML Will Suffer Irreparable Harm in the Absence of an Injunction

As this Court previously held, "[c]ourts have consistently found irreparable harm to exist in situations where there is a likelihood of confusion between the marks, and where the reputation and goodwill cultivated by the party seeking the injunction would be out of the party's control because of the infringement."  *Barefoot Contessa Pantry, LLC v. Aqua Star (USA) Co.*, 2015 WL 845711, *7 (S.D.N.Y., Feb. 26, 2015); *see also* ECF No. 31-1 at 29-30 (collecting cases).

Here, a likelihood of confusion exists.   Moreover, as discussed above, attendees at Defendants' 2017 OZYFEST were so confused that they were using the hashtag #ozzyfest (*i.e.*, the first name of Plaintiff's world-famous principal, Ozzy Osbourne, and identical save one "z" to Plaintiff's well-known OZZFEST mark), *not* #ozyfest, to indicate their attendance at Defendants' OZYFEST event.   ML, however, has no control over any aspect of Defendants' OZYFEST event.   This confusion, coupled with consumers associating OZZFEST with an event over which ML has no control, will destroy ML's carefully curated reputation and goodwill in the absence of an injunction.   As this Court held in *Barefoot Contessa*, this is sufficient to prove irreparable harm.   *See Barefoot Contessa Pantry, LLC*, 2015 WL 845711 at *7.

The foregoing notwithstanding, Defendants claim that ML fails to establish irreparable harm because ML presents no evidence of actual confusion, lost revenue, or other concrete harm actually suffered to date […]."   ECF No. 39 at 17.   Defendants' argument fails for at least two reasons.   First, they conflate a preliminary injunction motion with a trial on the merits.   At this stage, potentiality is sufficient to prove irreparable harm.   *See Microban Prods. Co. v. API Indus., Inc.,* 2014 WL 1856471, *21 (S.D.N.Y. May 8, 2014) (irreparable harm shown "where the potential for damage to Microban's reputation and goodwill is out of its control, Microban has also established that it would suffer an irreparable injury should injunctive relief not issue") (emphasis supplied).   Second, the facts of Defendants' cases are inapposite.   *See Citigroup Inc. v. AT&T Services, Inc.*, 2016 WL 4362206, *4-5 (S.D.N.Y., Aug. 11, 2016) (unlike here, the parties' services were unrelated, and consumers were accustomed to the parties' decades-long co-existence and partnership); *Alzheimer's Foundation of America, Inc. v. Alzheimer's Disease and Related Disorders Association, Inc.*, 2015 WL 4033019, *12 (S.D.N.Y., June 29, 2015) (unlike here, the plaintiff waited "years" before seeking injunctive relief); and *CSI Entm't v.*

*Anthem Media Grp., Inc.*, 2016 U.S. Dist. LEXIS 180749, *12-16 (E.D.N.Y. Dec. 30, 2016) (same).

### D.  ML Did Not "Delay" in Seeking Injunctive Relief

Defendants attempt to avoid a preliminary injunction by positing that, "despite [allegedly] learning of Ozy Media's use of the OZY FEST mark at least as early as June 2017, ML has sat on its hands for nearly a year."  ECF No. 39 at 15.  Defendants' argument is a red herring.  ML seeks to enjoin Defendants' 2018 OZYFEST event, *not* Defendants' 2017 OZYFEST.  Thus, what is relevant is how quickly ML sought to enjoin Defendants' 2018 OZYFEST after learning of it.  *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*, 414 F. Supp. 2d 414, 435 (S.D.N.Y. 1980) ("Parties should not be encouraged to sue before a practical need to do so has been clearly demonstrated").  As discussed below: (i) January 5, 2018 is the earliest ML could have reasonably known that Defendants were using OZYFEST for their 2018 event, and (ii) ML did not delay, let alone unduly delay, in seeking an injunction after January 5, 2018.

ML could not have reasonably known that Defendants were using OZYFEST for their 2018 event until January 5, 2018 for at least four reasons.   First, as Defendants' evidence confirms, 2017 was the first year that Defendants named their event OZYFEST.  ECF No. 41 at 5, ¶ 15 (Defendants' Co-Founder admitting the title of Defendants' 2016 festival was "OZY FUSION FEST").  Thus, Defendants' argument that ML should have known in 2017 that OZY FEST was allegedly an "annual" event is disingenuous, at best.  *See* ECF No. 39 at 16-7.

Second, none of the press coverage of the 2017 OZYFEST event mentions a 2018 OZYFEST event.  *See* ECF No. 41 at Exhs. 9-10.  Third, Defendants' principal claims Defendants "have been promoting Ozy Fest 2018 since Ozy Fest 2017, when we signaled to last year's attendees the opportunity to pre-register for this year's event. Since then we have

marketed the event via a Facebook page, a dedicated landing page (ozyfest.com) and our Ozy Media site." ECF No. 41 at ¶ 31.   Mr. Rao cites zero evidence to support *any* of these self-serving allegations.  *See id*.   Moreover, ML did not attend Defendants' 2017 OZYFEST.  Thus, even if Defendants could prove they announced plans for their 2018 OZYFEST to their 2017 OZYFEST attendees, that would be irrelevant in determining when ML learned about Defendants' 2018 OZYFEST event.   Further, the evidence contradicts Mr. Rao's claim. Defendants produced a promotional deck for their 2018 OZYFEST; however, the deck is marked "Confidential," and Defendants do not allege they distributed it to the public. *See* Shire Decl. at ¶ 15.  What is more, the record evidence establishes that Defendants' first public reference to their 2018 OZYFEST was on February 27, 2018 on Instagram.  *See* Guarracino Decl. ¶ 11 and Exh. 2.

Fourth, Defendants' counsel did not tell ML's counsel that Defendants intended to put on a 2018 OZYFEST event until January 5, 2018.  *See* ECF No. 40 at ¶ 43.  This is confirmed by ML's counsel. *See* Shire Decl. at ¶ 15.

There was no need for ML to have undertaken the significant expense of a preliminary injunction motion once the 2017 OZYFEST event took place on July 22, 2017, because as far as ML knew, there was no longer infringing activity, at least not until Defendants began publicly advertising and promoting their 2018 OZYFEST event on February 27, 2018.

Moreover, ML did not delay, let alone unduly delay, in seeking an injunction after first learning on January 5, 2018 that Defendants would use OZYFEST for their 2018 event.  Indeed, on January 5 both parties informed the Magistrate Judge Cott, who was then overseeing all pretrial proceedings, they wanted to have a mediation at the earliest opportunity.  On that day, Magistrate Judge Cott ordered the case to mediation  *See* ECF No. 25. The parties prepared for and participated in a Court-ordered mediation from January 5, 2018, through March 1, 2018.  *See* Shire Decl. at ¶ 13.  The parties also continued settlement negotiations during this period and at

the mediation itself on March 1.  *See* Shire Decl. at ¶ 13.  Their active settlement efforts, through and including March 1, militate against any alleged "delay."  *See Hearst Bus. Publ'g, Inc. v. W.G. Nichols, Inc.*, 76 F. Supp. 2d 459, 472 (S.D.N.Y. 1999); *see also Lexington Management Corp. v. Lexington Capital Partners*, 10 F. Supp.2d 271, 277 n. 3 (S.D.N.Y. 1998).

Moreover, as per Magistrate Judge Cott's rules, ML sought permission to move for a preliminary injunction just six days after the March 1 mediation failed to bring about settlement. *See* ECF No. 25.   Defendants cite zero authority for the proposition that moving for a preliminary injunction just six days after realizing that settlement was unavailing constitutes "delay."  *See generally* ECF No. 39.

### E.  The Balance of Hardships Tips Decidedly in Favor of Issuing an Injunction

Defendants claim they "would incur significant burden and expense[3] in redesigning and reproducing … promotional materials, advertising, and collateral materials should an injunction issue."  ECF No. 39 at 34.  However, their argument fails to appreciate they are using, with full knowledge of ML's objections, a confusingly similar mark.  What is more, Defendants are using their confusingly similar mark for a service—providing live music—for which ML has the *exclusive* right to use OZZFEST throughout the United States.  *Cf. Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc.*, 2016 WL 4367990, *6-7, 9 (S.D.N.Y., Aug. 12, 2016 (a case that Defendants cite; the plaintiff's registrations (two of which, unlike here, were on the Supplemental Register) did not cover "the organization of fashion shows," which the defendant produced and was known for).  In sum, Defendants knowingly took a risk when they decided to proceed with an OZYFEST event in 2018.  They should not now complain if the risk comes to fruition.

---

[3] Defendants have not bothered to quantify this alleged expense, which renders their argument suspect.

At bottom, an injunction would only stop Defendants from using the confusingly similar mark OZYFEST for their event, not stop the event itself.  This is not a "hardship."

### F.  Issuing an Injunction Will Serve the Public Interest

Consumers have an interest in not being confused.  *See* ECF No. 31-1 at 30-31. Attendees' confusion at Defendants' 2017 OZYFEST event indicates that confusion is likely if Defendants use OZYFEST for their 2018 event.  *See id*. Therefore, the public interest favors an injunction.

Defendants blithely claim the public has no interest in an injunction for two reasons. First, Defendants claim their use of OZYFEST has not caused any confusion.  As discussed above, that is not true.  Second, Defendants claim that having to change the name of their 2018 event would confuse "people who attended prior Ozy Fest events, people planning to attend this year, as well as people hired to work at the event, and speakers and other event participants." ECF No. 39 at 34-5.  This argument fails for at least two reasons.

First, the Lanham Act prevents confusion about the source of goods and services, *not* alleged confusion about why an infringer had to stop its infringing conduct.  Second, unlike the defendant in *Fashion Week, Inc.*, Defendants present no evidence of their alleged need to use OZYFEST to prevent Manhattan's economy in general, and festivals in particular, from falling into dire straits.  *Cf. Fashion Week, Inc.*, 2016 WL 4367990 at *9 (defendant's "New York Fashion Week is an important asset to the New York economy," and "the term 'New York Fashion Week' and related terms are useful for the promotion of New York's fashion industry").

## III.   Conclusion

Based on the foregoing, ML respectfully requests that this Court issue an Order: (i) preliminarily enjoining Defendants' use of the mark OZYFEST, pursuant to Fed. R. Civ. P. 65, and (ii) awarding ML any further relief the Court deems just and equitable.

Dated:  April 24, 2018
       New York, New York          Respectfully submitted,

                                         */s/ Howard J. Shire*
                                         Howard J. Shire
                                         PEPPER HAMILTON LLP
                                         The New York Times Building
                                         620 Eighth Avenue, 37th Floor
                                         New York, New York 100018
                                         Tel.: (212) 808-2700
                                         Fax.: (212) 286-9806
                                         Email: Shireh@pepperlaw.com

                                         Jonathan W. Thomas
                                         HUNTON ANDREWS KURTH LLP
                                         One Broadway
                                         New York, New York 10004
                                         Tel.: (212) 425-7200
                                         Fax: (212) 425-5288
                                         Email: JThomas@HuntonAK.com

                                         *Attorneys for Plaintiff*
                                         *Monowise Limited*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 24, 2018, I filed a true and correct copy of the foregoing document, titled *Memorandum of Law in Further Support of Plaintiff Monowise Limited's Preliminary-Injunction Motion Pursuant to Fed. R. Civ. P. 65(a)*, using the Court's Electronic Case-Filing System, which will transmit electronic notice of such filing to Defendants' counsel:

>   Tonia Ouellette Klausner, Esq.
>   WILSON SONSINI GOODRICH & ROSATI
>   1301 Avenue of the Americas, 40th Floor
>   New York, New York 10019
>   tklausner@wsgr.com

>                           */s/ Howard J. Shire*
>                           Howard J. Shire

>                           *Attorney for Plaintiff*
>                           *Monowise Limited*