## IN THE UNITED STATES DISTRICT COURT
## FOR THE NEW YORK DISTRICT OF NEW YORK

MONOWISE LIMITED                                           :
                                                          :
                                    Plaintiff,            :          ECF Case
                                                          :
                 v.                                       :          Case No. 17-cv-8028 (JMF)
                                                          :
OZY MEDIA, INC. and CARLOS WATSON                         :
                                                          :
                                    Defendants.           :
                                                          :

## DECLARATION OF HOWARD J. SHIRE
## IN SUPPORT OF PLAINTIFF'S
## MOTION FOR A PRELIMINARY INJUNCTION

I, Howard J. Shire, an attorney duly admitted to practice before this Court, hereby

declare under penalty of perjury as follows:

1.      I am a member of Pepper Hamilton LLP, counsel for the Plaintiff

Monowise Limited ("ML") in the above-captioned case.  I submit this declaration in further

support of Plaintiff's motion for a preliminary injunction, and to rebut some of the allegations

made by Ms. Tonia Klausner in her declaration dated April 13, 2018 (ECF No. 40).

2.      Attached as Exhibit 1 are portions of the transcript of the deposition of

Michael Guarracino, Plaintiff's Rule 30(b)(6) designee.

3.      Ms. Klausner claims in paragraph 27 of her declaration that Mr.

Guarracino was unprepared to discuss topic no. 10 in the 30(b)(6) notice.  This is not accurate.

He testified that he looked for written marketing guidelines concerning display of the Ozzfest

mark, but found none.  (Ex. 1 at 65:12-66:5).  He also testified about how marketing materials

are approved on behalf of Plaintiff. (Ex. 1 at 63:4-64:4)

4.      Ms. Klausner also claims in paragraph 27 of her declaration that Mr. Guarracino was not prepared to testify regarding topic no. 11, which concerns the Internet users "Plaintiff targets" for the advertisement and/or marketing of the Ozzfest events.  Once again this statement is inaccurate, because, as Mr. Guarracino testified, Plaintiff does not do any advertising for Ozzfest; that is done by a third party,  namely Live Nation, on behalf of Plaintiff (Ex. 1 at 80:7-17; 72:9-17; 67:15-21).  Thus, topic 11 contains a false supposition, namely that Plaintiff advertises the Ozzfest event.  Ms. Klausner even admits in her declaration that Mr. Guarracino stated that Plaintiff does not engage in any advertising for Ozzfest events.  (ECF No. 40, paragraph 37).  In sum, Live Nation may target internet users for Ozzfest advertising, but topic 11 asked about Plaintiff's activity in this regard, which Mr. Guarracino testified does not exist.

5.      Ms. Klausner also takes Mr. Guarracino to task for supposedly not being prepared to testify regarding topic 20, which concerns complaints or criticisms about goods or services marketed or sold by Plaintiff under OZZFEST or any of the other marks asserted in this case.  In fact, however, he testified that he reviewed Plaintiff's files to prepare for topic 20, but did not find any complaints or criticisms. (Ex. 1 93:23-94:9).

6.      Ms. Klausner also claims that Plaintiff refused to produce Sharon Osbourne for a "properly noticed deposition."  In fact, this deposition was not properly noticed, because Ms. Osbourne is not an employee, officer, or director of Plaintiff.  "She is a third party consultant advisor" to Plaintiff. (Ex. 1 at 11:24-12:3).  Thus, she cannot be compelled to testify via a notice of deposition.

7.      Ms. Klausner misleads the Court by claiming that Plaintiff's initial interrogatory responses identified Ms. Osbourne as the only "human being" affiliated with

-2-

Plaintiff with knowledge of the issues in this case. In fact Mr. Guarracino was identified in response to Interrogatory No. 11, and Live Nation, while obviously not a "human being", was also identified in response to several interrogatories. (Exhibit 2). Not surprisingly, Ms. Klausner, although well aware of Plaintiff's supplemental interrogatory responses, failed to mention that these responses identify Mr. Guarracino in response to many of Defendants' interrogatories. (Exhibit 3).

8.     Ms. Klausner refers to the amended deposition notice of Ms. Osbourne for April 11, 2018 in paragraph 31 of her declaration (ECF No. 40). However, she ignores the fact that I had informed her prior to service of this notice that Ms. Osbourne was not available on that day. (Exhibit 4).

9.     In addition, Ms. Klausner and I had agreed that Defendants' only deposition in connection with the preliminary injunction motion would be a 30(b)(6) deposition of Plaintiff. This agreement was even reported to Magistrate Judge Cott in a telephone conference on March 9, 2018 when he was in charge of the instant motion. Ms. Klausner appears to have regretted this agreement, because she subsequently told me she had assumed that Sharon Osbourne would be Plaintiff's 30(b)(6) witness. *See* Exh. 4.

10.     In paragraph 33 of her declaration, Ms. Klausner does not provide a complete picture of our conversation following the court conference on April 9, 2018. I told her that while under the rules Ms. Osbourne needed to be served with a subpoena in order to give a deposition, I also told her that we would waive this requirement, if the parties agree on a mutually convenient date and location for the deposition.

11.     In paragraph 37 of her declaration Ms. Klausner tries to portray Mr. Guarracino as contradicting himself, having stated on the one hand that Plaintiff spends

-3-

substantial sums in advertising, promoting and marketing OZZFEST concerts, but on the other hand stating that Plaintiff does not engage in advertising for Ozzfest. However, there is no contradiction. Mr. Guarracino testified that while Live Nation markets the Ozzfest events, Plaintiff compensates Live Nation for this marketing. (Ex. 1 62:22-63:3)

12.     Upon Plaintiff first becoming aware of Ozy Media and its OZYFEST mark, Plaintiff's counsel immediately sent a protest letter in late June 2017. Defendants responded, and I engaged in settlement communications with Defendants' counsel, which lasted into January 2018, even after Plaintiff filed suit in October 2017. However, not until January 5, 2018 did Defendants' counsel first inform me that Defendants had decided to put on an Ozyfest event in July 2018. On that same day, both parties told Magistrate Judge Cott that they wanted to have a mediation at the earliest opportunity to explore possible settlement. Magistrate Judge Cott assigned the case to mediation that same day (*see* ECF No. 24), and the parties and mediator ultimately agreed upon March 1, 2018 as the earliest, mutually convenient date for the mediation. Plaintiff, and presumably the Defendants, started preparing for the mediation in January. Both parties submitted mediation statements to the mediator on February 23, 2018. The parties also continued settlement discussions during the period between January 5, 2018 and March 1, 2018.

13.     The March 1 mediation was not successful. Six days later, on March 7, 2018, Plaintiff, in accordance with the rules of Magistrate Judge Cott, wrote to request permission to move for a preliminary injunction. *See* ECF No. 25.

14.    Defendants produced during discovery in this case a promotional deck for their 2018 OZYFEST event,  which they Bates Stamped "Ozy_Media00177."  However, the deck is marked "Confidential," and Defendants do not allege they distributed it to the public.

Executed this 24th day of April, 2018
in New York, New York.

Howard J. Shire

# EXHIBIT 1

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------x

MONOWISE LIMITED CORPORATION,

                    Plaintiff,

        -against-              No. 1:17-CV-08028-LAK-JLC

OZY MEDIA, INC. AND CARLOS WATSON,

                    Defendants.

---------------------------------------x

CONTAINS HIGHLY CONFIDENTIAL PORTION

DEPOSITION OF MICHAEL GUARRACINO

New York, New York

Wednesday, April 11, 2018

Reported by:
Aydil M. Torres, CSR
JOB NO. 21304

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 2

1

2

3

4                    April 11, 2018

5                    12:11 p.m.

6

7

8                    Deposition of MICHAEL

9          GUARRACINO, held at the offices of

10         Andrews Kurth Kenyon, LLP, One

11         Broadway, New York, New York,

12         pursuant to Notice, before Aydil M.

13         Torres, a Notary Public of the

14         State of New York.

15

16

17

18

19

20

21

22

23

24

25

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 3

1

2

3    A P P E A R A N C E S:

4

5        PEPPER HAMILTON LLP

6        Attorneys for Plaintiff

7            620 Eight Avenue, 37th Floor

8            New York, New York 10018

9        BY:  HOWARD SHIRE, ESQ.
                 shireh@pepperlaw.com

10

11

12        WILSON SONSINI GOODRICH & ROSATI

13        Attorneys for Defendants

14            1301 Avenue of the Americas, 40th Floor

15            New York, New York 10019

16        BY:  TONIA OULLETTE KLAUSNER, ESQ.
                 tklausner@wsgr.com
17                 UZEZI ABUGO, ESQ.
                 uabugo@wsgr.com
18

19

20

21

22

23

24

25

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 4

1

2        S T I P U L A T I O N S

3

4

5        IT IS FURTHER STIPULATED AND AGREED

6    that all objections, except as to the form

7    of the question, shall be reserved to the

8    time of the trial;

9        IT IS FURTHER STIPULATED AND AGREED

10    that the within deposition may be signed

11    before any Notary Public with the same

12    force and effect as if signed and sworn to

13    before the Court.

14

15

16

17

18

19

20

21

22

23

24

25

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 5

1

2    M I C H A E L      G U A R R A C I N O,

3              the witness herein, having been

4              first duly sworn by a Notary Public

5              of the State of New York, was

6              examined and testified as follows:

7              Pursuant to notice.

8                   (Defendant's Exhibit 1,

9                   Notice of Deposition, marked

10                  for identification, as of

11                  this date.)

12                  THE REPORTER:  Please state

13         your name for the record.

14                  THE WITNESS:  Michael

15         Guarracino.

16                  THE REPORTER:  Please state

17         your address for the record.

18                  THE WITNESS:  9135 West 25th

19         Street, Los Angeles, California

20         90034.

21    EXAMINATION BY

22    MS. KLAUSNER:

23         Q.   Good afternoon, Mr. Guarracino.

24         A.   Good afternoon.

25         Q.   My name is Tonia Klausner.  I am

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 11

1               Michael Guarracino

2    are Osbourne household staff.

3                 MR. SHIRE:  Just note my

4            continuing objection to this line

5            of inquiry.  It's beyond the

6            30(b)(6) categories.

7         Q.   Who is Collin Newman?

8         A.   Collin Newman is a business

9    manager.

10        Q.   Okay.  He is a business manager for

11   whom?

12        A.   For Sharon and Ozzy Osbourne.

13        Q.   Is Mr. Newman employed by Monowise?

14        A.   No.

15        Q.   Okay.  Who are the officers of

16   Monowise?

17        A.   John Osbourne.

18        Q.   And what is John Osbourne's title

19   with the company?

20        A.   He is the director.

21        Q.   Does the company have any other

22   officers?

23        A.   No.

24        Q.   What is Sharon Osbourne's role, if

25   any, with respect to Monowise?

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 12

1                Michael Guarracino

2      A.    She is a third party consultant

3   advisor.

4      Q.    Does Monowise have a CEO?

5      A.    No.

6                 MR. SHIRE:  Same objection.

7                 Beyond the scope of the

8            30(b)(6) categories.

9      Q.    Who's the ultimate decision-maker

10  for Monowise?

11                MR. SHIRE:  Objection as to

12           form and beyond the scope of the

13           30(b)(6) categories.

14     Q.    You can answer.

15     A.    Okay.  John Osbourne.

16     Q.    Who owns Monowise?

17     A.    John Osbourne.

18     Q.    How does Monowise own revenue?

19     A.    Through recordings, publishing,

20  merchandising.

21     Q.    Does Monowise earn revenue through

22  licensing the trademarks it owns?

23     A.    Yes.

24     Q.    Who keeps the books for Monowise?

25                MR. SHIRE:  Same objection.

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 62

```
 1                    Confidential
 2        A.   Just in name similarity.
 3        Q.   Are there any third parties that
 4   have been engaged to advertise the Ozzfest
 5   event for 2016 or 2017?
 6        A.   Say that again, sorry.
 7        Q.   Sorry, it was a terribly worded
 8   question.
 9             The issue I am having trouble with
10   is I don't know whether Monowise -- let me
11   ask you that.
12             Does Monowise engage third parties
13   to advertise Ozzfest?
14        A.   Live Nation handles, you know, most
15   of the advertising.  We -- and then we work
16   with companies to, like, global touring
17   services to come up with T.V. spots, and
18   radio spots, and with the agents to -- for
19   any, sort of, print ads and Live Nation will
20   come up with banner ads for -- to push out on
21   social media and other web sites.
22        Q.   Does Monowise compensate Live
23   Nation for the advertising that it does for
24   Ozzfest?
25        A.   It is thrown into the, you know,
```

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 63

1                    Confidential

2     deducted from the final, you know,

3     settlements at the end.

4          Q.    Is Live Nation provided with any

5     marketing guidelines for how to present the

6     Ozzfest name?

7          A.    There are marketing guidelines,

8     sure.  They know -- they -- it's not, like, a

9     -- probably a document, but they know that

10    Sharon wants to approve all aspects of

11    anything that goes out, any marketing.

12         Q.    Are there -- are there marketing --

13    any kind of written marketing guidelines for

14    Ozzfest?

15         A.    In respect to what?

16         Q.    In respect to how the poster looks

17    or how -- what it's going to say on the

18    tickets or how advertising is going to

19    appear?  Or is the process just the thing is

20    prepared and sent for approval, verses being

21    given any guidelines in advance to determine

22    how to do the creative?

23         A.    It's -- normally, it's -- they will

24    come back with something and then Sharon will

25    look at it and decide if it needs to be

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 64

1                    Confidential

2    adjusted or she doesn't like it or, you know,

3    needs to be scrapped and started from the

4    beginning.

5         Q.   How would the proposed marketing

6    materials be sent to Ms. Osbourne?

7              Is that done through e-mail,

8    through mail?

9         A.   E-mail.

10        Q.   Does Monowise own any trademarks

11   for logos for Ozzfest?

12        A.   I would think that that would be

13   covered under the trademark, but I would have

14   to look at the --

15        Q.   So looking at Defendant's Exhibit

16   2, do you know if the "Ozzfest" word that is

17   on Defendant's Exhibit 2 is a trademark logo?

18                  MR. SHIRE:   Objection.

19        A.   I don't know.

20        Q.   Do you know if Ozzy Osbourne has a

21   trademark logo?

22        A.   Yes.

23        Q.   What does that logo look like?

24        A.   It's that -- that - this font, but,

25   normally, it's in a stacked logo.

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 65

```
 1                    Confidential
 2                    MS. KLAUSNER:  The witness
 3            is -- just for the record, the
 4            witness is pointing to Defendant's
 5            Exhibit 2, where there is the
 6            lettering for "Ozzy Osbourne."
 7       Q.   In preparation for your deposition
 8  today, what did you do to determine if there
 9  were any marketing guidelines concerning the
10  display of the Ozzfest mark?
11       A.   Can you explain that?
12       Q.   Sure.  Topic number 10 on our
13  deposition notice which is Defendant's
14  Exhibit 1 --
15       A.   Uh-huh.
16       Q.   -- is "all marketing guidelines and
17  similar policies concerning the display of
18  the Ozzfest mark."
19            My question is:  What did you do to
20  determine if there are any marketing
21  guidelines or similar policies concerning the
22  display of the Ozzfest mark?
23       A.   I didn't come across any written
24  marketing guidelines on the display of the
25  Ozzfest mark.
```

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 66

1                    Confidential

2        Q.   Did you look anywhere for those?

3        A.   Well, yeah, I have been looking for

4    stuff but -- but, no, I didn't come across

5    any.

6        Q.   Okay.  But you didn't look,

7    specifically, for the preparation of the

8    deposition today?

9        A.   No.

10       Q.   How was Ozzfest 2017 promoted?  In

11   what medium?

12       A.   T.V., radio, on social media, the

13   banner ads on web sites.  We staged some

14   events to pop up shops to promote the

15   tickets, including personal appearances by

16   Sharon and Ozzy at a couple of them.

17       Q.   What kind of T.V. promotions were

18   done for Ozzfest 2017?

19       A.   I could tell you of local channel 5

20   news, came over and did a piece at their

21   house, and then drove to the pop up store

22   event with the news reporter.

23       Q.   Channel 5 news, is that in

24   California?

25       A.   Yes.

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 67

1              Confidential

2        Q.   Were there any other T.V.

3   promotions for Ozzfest 2017?

4        A.   None that I can recall.

5        Q.   How was Ozzfest 2017 promoted on

6   the radio?

7        A.   We did a promotion with local radio

8   KLOS, DKAL, a number of other ones in the

9   outlying areas.

10       Q.   Those are all California radio

11  stations?

12       A.   Uh-huh.  And probably -- and all

13  the way out probably to Palm Springs and Las

14  Vegas, yeah.  And San Diego.

15       Q.   How was Ozzfest 2017 promoted on

16  social media?

17       A.   Just constantly promoted on the

18  Ozzfest social media sites.  Live Nation

19  bought -- they, you know, bought ads and put

20  it up, you know, bought, like, buys, you

21  know, for placement on social media.

22       Q.   What web sites did -- sorry, let me

23  start that over.

24            On what web sites were banner ads

25  for Ozzfest 2017 run?

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 72

1                    Confidential
2    local stations, yes.
3         Q.   Were there radio advertisements for
4    Ozzfest 2016?
5         A.   Sure.
6         Q.   Were those also on California local
7    stations?
8         A.   Local, California.
9         Q.   Were there banner advertisements on
10   web sites for Ozzfest 2016?
11        A.   Yes.
12        Q.   And for the 2016 banner
13   advertisements, do you know the audience
14   segments that were being targeted?
15        A.   I don't know the categories.
16        Q.   Was Live Nation again doing that?
17        A.   Yes.
18        Q.   Were there any newspaper
19   advertisements for Ozzfest 2016?
20        A.   None that I recall.
21        Q.   Were there any advertisements for
22   Ozzfest in magazines for 2016?
23        A.   Yes.
24        Q.   For which magazines were there
25   advertisements?

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 80

1                     Confidential

2                     Documents, marked for

3                     identification, as of this

4                     date.)

5        Q.   The witness asked to clarify

6   something.

7        A.   Category 11, where it states "the

8   audience of Internet users Plaintiff targets

9   and has targeted for the past ten years for

10  advertising and for marketing of the Ozzfest

11  event," Monowise doesn't target for

12  advertising at all.  They don't do any

13  advertising.  That's all Live Nation, that

14  does advertising.

15       Q.   Okay.  So Monowise, itself, does

16  not do advertising for Ozzfest?

17       A.   No.

18       Q.   Okay.  Taking a look at what's been

19  marked as Defendant's Exhibit 6, can you tell

20  me, is this now the profile document you were

21  referring to previously regarding

22  demographics for Ozzfest?

23       A.   Yes.

24            MR. SHIRE:  Can I get the

25            other copy of that, so I can look

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 93

1                    Confidential

2        A.    MSO.

3        Q.    Where are they located?

4        A.    Sharman Oaks, California.

5        Q.    Does MSO have a practice of sending

6   news articles about Ozzfest to you?

7        A.    Sure.

8        Q.    And among those news articles, have

9   you seen any that have portrayed Ozzfest in a

10  negative light?

11       A.    I am sure, but I can't recall any

12  specific, off the top of my head.

13       Q.    Was there ever an Ozzfest event

14  where somebody died?

15       A.    There was one in D.C. where a

16  couple of people died.  Not D.C. I mean --

17  sorry.  New Jersey.  Homedale, New Jersey.

18       Q.    What did they die from?

19       A.    I don't remember.

20       Q.    Have there been arrests at Ozzfest

21  for underage drinking?

22       A.    I don't know.

23       Q.    What did you do to determine

24  whether there have been complaints or

25  criticisms of the nature or quality of

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 94

1                   Confidential

2    Ozzfest?

3         A.   What have we done?

4         Q.   What did you do to prepare today to

5    give testimony regarding topic number 20?

6         A.   (Witness peruses exhibit.)

7              I looked through files, but I

8    didn't -- I collected a whole bunch of files,

9    but I didn't find anything.

10        Q.   Okay.  When Monowise provided

11   documents in connection with this litigation,

12   to be produced to the Defendants, did that

13   include news articles?

14        A.   Yes.

15        Q.   And were you involved with that

16   collection?

17        A.   In the collecting of it, yes.

18        Q.   How did you go about collecting the

19   news articles that you provided in connection

20   with the litigation?

21        A.   I started pulling files and

22   collecting, you know, as much as possible.

23        Q.   Okay.  Were there files specific to

24   news articles about Ozzfest?

25        A.   There was press articles, yes.

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MONOWISE LIMITED, | |
| *Plaintiff*, | |
| v. | Case No. 17-cv-8028 (LAK)(JLC) |
| OZY MEDIA, INC., and CARLOS WATSON, | |
| *Defendants*. | |

**PLAINTIFF MONOWISE LIMITED'S
RESPONSES AND OBJECTIONS TO DEFENDANTS'
FIRST SET OF INTERROGATORIES PURSUANT TO FED. R. CIV. P. 33**

Pursuant to Rule 33 of the FEDERAL RULES OF CIVIL PROCEDURE, Plaintiff Monowise Limited ("Monowise" or "Plaintiff"), by and through its undersigned counsel, hereby serves its responses and objections to Defendants, Ozy Media, Inc., and Carlos Watson's (collectively, "Defendants" unless indicated otherwise), first set of interrogatories in the above-captioned lawsuit.

**GENERAL RESPONSE**

The following responses, while based on diligent exploration by Monowise and its counsel, are necessarily supported only by those facts and writings presently and specifically known and available to Monowise. Monowise reserves the right to change, amend, or supplement any or all of the information and materials contained in its responses with documents, information, and/or things that it learns were omitted by inadvertence, mistake, excusable neglect, or as additional facts are ascertained, analyses are made, research is completed, and contentions are made in this proceeding.

Monowise submits each response and objection to each individual discovery request without prejudice to, and without in any way waiving, the general objections listed below but not expressly set forth in that response.  The assertion of any objection to a discovery request in any response below is neither intended as, nor shall in any way be deemed, a waiver of Monowise's right to assert that or any other objection on a later date.

Monowise makes these responses and objections solely for the limited purpose of this lawsuit.  All of Monowise's responses and objections to Defendants' discovery requests in this lawsuit are subject to all objections as to competence, relevance, materiality, propriety and admissibility, and to any and all other objections on any ground that would require the exclusion of any statements contained herein if the same were asked of, or statements contained herein were made by, a witness present and testifying in this proceeding.

Moreover, no incidental or implied admissions are intended by Monowise's collective responses.  The fact that Monowise responds or objects to all or part of any discovery request shall not be construed or taken as an admission that Monowise accepts or admits the existence of any purported facts set forth or assumed by such discovery request, or that Monowise has waived or intended to waive any part of any objection to the discovery request.

## **GENERAL OBJECTIONS**

1.     Monowise objects to each discovery request to the extent that it requires Monowise to obtain and produce information generated by persons over whom Monowise does not exercise control on the grounds that said discovery request exceeds the permissible scope of discovery (hereinafter the "**Absence of Control Objection**").

2.      Monowise objects to each discovery request to the extent that it is vague, ambiguous, overbroad, or otherwise lacks sufficient precision to allow a response (hereinafter the "**Ambiguity Objection**").

3.      Monowise objects to each discovery request to the extent that it calls for duplicative information, unnecessary searches, review, and production of information not likely to be discoverable, is intended to harass, or is otherwise designed to be oppressive.  Monowise further objects to the discovery requests to the extent that they are overbroad or not reasonably limited in time (including, without limitation, all interrogatories that request the identification of "all Persons") (hereinafter the "**Undue Burden Objection**").

4.      Monowise objects to each discovery request to the extent that it seeks information irrelevant to the issues in this proceeding or not reasonably calculated to lead to the discovery of admissible evidence (hereinafter the "**Relevancy Objection**").

5.      Monowise objects to each discovery request to the extent that it seeks information that is subject to the attorney-client privilege, work-product doctrine, and/or any other applicable privilege (hereinafter the "**Privilege Objection**").

6.      Monowise objects to each discovery request to the extent that it seeks information of a commercially sensitive, confidential, and/or proprietary nature. Monowise will produce such documents or information, if any, subject to the terms and conditions of a Protective Order agreed to by the parties at a later date (hereinafter the "**Confidentiality Objection**").

7.      Monowise objects globally to the definition of "Plaintiff" to the extent that such definitions seek to improperly expand the production obligations of a single party, namely, Monowise, beyond the scope of Monowise's obligations under the Federal Rules of Civil

Procedure.  Monowise shall not produce information possessed by third-party entities, whether related entities or not, that are otherwise properly subject to discovery pursuant to FRCP 45.

8.      Monowise objects globally to the discovery requests to the extent that they seek to impose obligations beyond those imposed by the Local Civil Rules of the Southern District of New York, the Federal Rules of Civil Procedure, or that are inconsistent therewith.

9.      Monowise objects globally to the discovery requests to the extent that they exceed the permissible number of requests that a party may propound under the Federal Rules of Civil Procedure.

10.     Monowise specifically incorporates each and every objection listed above into each and every response made below, as though fully set forth therein.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1:

*Identify all Persons with knowledge or information relevant to Plaintiffs claims as set forth in the Complaint.*

### Response to Interrogatory No. 1:

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 1.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 1 as follows: Live Nation Entertainment, Inc, and Sharon Osbourne.

### INTERROGATORY NO. 2:

*Identify all Persons with knowledge or information Concerning the basis for Plaintiffs claim that the OZZFEST Mark is famous in the United States.*

4

**Response to Interrogatory No. 2:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 2.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 2 as follows: Live Nation Entertainment, Inc, and Sharon Osbourne.

**INTERROGATORY NO. 3:**

*Identify all Persons with knowledge or information Concerning the goods and services in connection with which Plaintiff has used the OZZFEST Mark in the United States.*

**Response to Interrogatory No. 3:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 3.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 3 as follows: Live Nation Entertainment, Inc, and Sharon Osbourne.

**INTERROGATORY NO. 4:**

*Identify all Persons with knowledge or information Concerning the annual sales figures (including both dollar volume and units) in the United States of each product or service sold by Plaintiff under the OZZFEST Mark.*

**Response to Interrogatory No. 4:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 4.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 4 as follows: Live Nation Entertainment, Inc, and Sharon Osbourne.

**INTERROGATORY NO. 5:**

*Identify the Persons most knowledgeable about the advertising, and promotion of each good or service offered by Plaintiff under the OZZFEST Mark in the United States.*

**Response to Interrogatory No. 5:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 5.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 5 as follows: Live Nation Entertainment, Inc, and Sharon Osbourne.

**INTERROGATORY NO. 6:**

*Identify all Persons with knowledge or information Concerning whether there has been any interruption to the continuous use of the OZZFEST Mark in connection with any type of Plaintiff's goods or services.*

**Response to Interrogatory No. 6:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 6 as follows: Sharon Osbourne.

**INTERROGATORY NO. 7:**

*Identify all Persons with knowledge or information Concerning the demographics or characteristics of actual and target customers of the goods and services marketed and sold by Plaintiff under OZZFEST Mark in the United States.*

**Response to Interrogatory No. 7:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 7.  Subject to, and without waiving, the General and Specific

Objections asserted herein, Plaintiff responds to Interrogatory No. 7 as follows: Live Nation Entertainment, Inc.

**INTERROGATORY NO. 8:**

Identify all Persons with knowledge or information Concerning any Market Research conducted by Plaintiff or any similar action on its behalf related to the OZZFEST Mark.

**Response to Interrogatory No. 8:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 8. Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 8 as follows: Live Nation Entertainment, Inc.

**INTERROGATORY NO. 9:**

Identify all Persons most knowledgeable regarding all past and present plans to use or promote the OZZFEST Mark.

**Response to Interrogatory No. 9:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 9. Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 9 as follows: Live Nation Entertainment, Inc, and Sharon Osbourne.

**INTERROGATORY NO. 10:**

Identify all Persons with knowledge or information Concerning any instance of actual confusion between Plaintiff and Defendants arising from Ozy Media's use of the OZY FEST Mark.

**Response to Interrogatory No. 10:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 10.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 10 as follows: anyone who read the 2016 *People* Magazine article quoted in the Complaint in this lawsuit.

**INTERROGATORY NO. 11:**

*Identify all Persons with knowledge or information Concerning the circumstances under which Plaintiff first became aware of Ozy Media and its use of the OZY FEST Mark.*

**Response to Interrogatory No. 11:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 11.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 11 as follows: Michael Guarracino.

**INTERROGATORY NO. 12:**

*Identify all Persons with knowledge or information Concerning Plaintiff's enforcement of Plaintiff's rights in the OZZFEST Mark, including all objections made by Plaintiff and all legal proceedings instituted by Plaintiff.*

**Response to Interrogatory No. 12:**

Plaintiff asserts the Absence of Control, Ambiguity, and Undue Burden Objections to Interrogatory No. 12.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 12  as follows: there have been no such objections or legal proceedings aside from the present action.

**INTERROGATORY NO. 13:**

Set forth in detail each category of damage Plaintiff claims to have incurred arising from the acts of Defendants complained of in its Complaint, including the computation of the amount of damages Plaintiff claims to have incurred for each category.

**Response to Interrogatory No. 13:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 13.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 13  as follows: Plaintiff seeks an award of its damages, and Defendants' profits, in this action.  Given the infancy of this proceeding, Plaintiff has not yet calculated either category of damages.   Accordingly, Plaintiff will supplement this response to include a computation of each category of damages as discovery proceeds in this action.

Dated: March 2, 2018
New York, New York                         Respectfully submitted,

                                            /s/ Howard J. Shire
                                            Howard J. Shire
                                            Jonathan W. Thomas
                                            ANDREWS KURTH KENYON LLP
                                            One Broadway
                                            New York, New York 10004
                                            Tel.: (212) 425-7200
                                            Fax: (212) 425-5288
                                            Email: hshire@kenyon.com
                                            Email: jthomas@kenyon.com

                                            Attorneys for Plaintiff
                                            Monowise Limited

## CERTIFICATE OF SERVICE

I hereby certify that, on March 2, 2018, I served a true and correct copy of the foregoing document, titled *Plaintiff Monowise Limited's Responses and Objections to Defendants' First Set of Interrogatories Pursuant to Fed. R. Civ. P. 33*, via electronic mail, upon the following counsel of record for Defendants:

> Tonya Ouellette Klausner, Esq.
> Uzezi Abugo, Esq.
> WILSON SONSINI GOODRICH & ROSATI
> 1301 Avenue of the Americas, 40th Floor
> New York, New York 10019
> tklausner@wsgr.com
> uabugo@wsgr.com

*/s/ Jonathan W. Thomas*
Jonathan W. Thomas

*Attorney for Plaintiff*
*Monowise Limited*

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MONOWISE LIMITED,<br><br>　　　　　　　*Plaintiff*,<br><br>　　v.<br><br>OZY MEDIA, INC., and CARLOS WATSON,<br><br>　　　　　*Defendants*. | Case No. 17-cv-8028 (JMF) |

**PLAINTIFF MONOWISE LIMITED'S
SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS'
FIRST SET OF INTERROGATORIES PURSUANT TO FED. R. CIV. P. 33**

Pursuant to Rules 26 and 33 of the FEDERAL RULES OF CIVIL PROCEDURE, Plaintiff Monowise Limited ("Monowise" or "Plaintiff"), by and through its undersigned counsel, hereby serves its supplemental responses and objections to Defendants, Ozy Media, Inc., and Carlos Watson's (collectively, "Defendants" unless indicated otherwise), first set of interrogatories in the above-captioned lawsuit.

### GENERAL RESPONSE

The following responses, while based on diligent exploration by Monowise and its counsel, are necessarily supported only by those facts and writings presently and specifically known and available to Monowise. Monowise reserves the right to change, amend, or supplement any or all of the information and materials contained in its responses with documents, information, and/or things that it learns were omitted by inadvertence, mistake, excusable neglect, or as additional facts are ascertained, analyses are made, research is completed, and contentions are made in this proceeding.

1

Monowise submits each response and objection to each individual discovery request without prejudice to, and without in any way waiving, the general objections listed below but not expressly set forth in that response.  The assertion of any objection to a discovery request in any response below is neither intended as, nor shall in any way be deemed, a waiver of Monowise's right to assert that or any other objection on a later date.

Monowise makes these responses and objections solely for the limited purpose of this lawsuit.  All of Monowise's responses and objections to Defendants' discovery requests in this lawsuit are subject to all objections as to competence, relevance, materiality, propriety and admissibility, and to any and all other objections on any ground that would require the exclusion of any statements contained herein if the same were asked of, or statements contained herein were made by, a witness present and testifying in this proceeding.

Moreover, no incidental or implied admissions are intended by Monowise's collective responses.  The fact that Monowise responds or objects to all or part of any discovery request shall not be construed or taken as an admission that Monowise accepts or admits the existence of any purported facts set forth or assumed by such discovery request, or that Monowise has waived or intended to waive any part of any objection to the discovery request.

## GENERAL OBJECTIONS

1.     Monowise objects to each discovery request to the extent that it requires Monowise to obtain and produce information generated by persons over whom Monowise does not exercise control on the grounds that said discovery request exceeds the permissible scope of discovery (hereinafter the "**Absence of Control Objection**").

2.      Monowise objects to each discovery request to the extent that it is vague, ambiguous, overbroad, or otherwise lacks sufficient precision to allow a response (hereinafter the "**Ambiguity Objection**").

3.      Monowise objects to each discovery request to the extent that it calls for duplicative information, unnecessary searches, review, and production of information not likely to be discoverable, is intended to harass, or is otherwise designed to be oppressive.  Monowise further objects to the discovery requests to the extent that they are overbroad or not reasonably limited in time (including, without limitation, all interrogatories that request the identification of "all Persons") (hereinafter the "**Undue Burden Objection**").

4.      Monowise objects to each discovery request to the extent that it seeks information irrelevant to the issues in this proceeding or not reasonably calculated to lead to the discovery of admissible evidence (hereinafter the "**Relevancy Objection**").

5.      Monowise objects to each discovery request to the extent that it seeks information that is subject to the attorney-client privilege, work-product doctrine, and/or any other applicable privilege (hereinafter the "**Privilege Objection**").

6.      Monowise objects to each discovery request to the extent that it seeks information of a commercially sensitive, confidential, and/or proprietary nature. Monowise will produce such documents or information, if any, subject to the terms and conditions of a Protective Order agreed to by the parties at a later date (hereinafter the "**Confidentiality Objection**").

7.      Monowise objects globally to the definition of "Plaintiff" to the extent that such definitions seek to improperly expand the production obligations of a single party, namely, Monowise, beyond the scope of Monowise's obligations under the Federal Rules of Civil

Procedure.  Monowise shall not produce information possessed by third-party entities, whether related entities or not, that are otherwise properly subject to discovery pursuant to FRCP 45.

8.     Monowise objects globally to the discovery requests to the extent that they seek to impose obligations beyond those imposed by the Local Civil Rules of the Southern District of New York, the Federal Rules of Civil Procedure, or that are inconsistent therewith.

9.     Monowise objects globally to the discovery requests to the extent that they exceed the permissible number of requests that a party may propound under the Federal Rules of Civil Procedure.

10.     Monowise specifically incorporates each and every objection listed above into each and every response made below, as though fully set forth therein.

**SPECIFIC RESPONSES AND OBJECTIONS**

**INTERROGATORY NO. 1:**

*Identify all Persons with knowledge or information relevant to Plaintiffs claims as set forth in the Complaint.*

**Supplemental Response to Interrogatory No. 1:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 1.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 1 as follows: Live Nation Entertainment, Inc.; Sharon Osbourne; and Michael Guarracino.

**INTERROGATORY NO. 2:**

*Identify all Persons with knowledge or information Concerning the basis for Plaintiffs claim that the OZZFEST Mark is famous in the United States.*

4

**Supplemental Response to Interrogatory No. 2:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 2.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 2 as follows: Live Nation Entertainment, Inc.; Sharon Osbourne; and Michael Guarracino.

**INTERROGATORY NO. 3:**

*Identify all Persons with knowledge or information Concerning the goods and services in connection with which Plaintiff has used the OZZFEST Mark in the United States.*

**Supplemental Response to Interrogatory No. 3:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 3.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 3 as follows: Live Nation Entertainment, Inc.; Sharon Osbourne; and Michael Guarracino.

**INTERROGATORY NO. 4:**

*Identify all Persons with knowledge or information Concerning the annual sales figures (including both dollar volume and units) in the United States of each product or service sold by Plaintiff under the OZZFEST Mark.*

**Supplemental Response to Interrogatory No. 4:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 4.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 4 as follows: Live Nation Entertainment, Inc.; Sharon Osbourne; and Michael Guarracino.

**INTERROGATORY NO. 5:**

*Identify the Persons most knowledgeable about the advertising, and promotion of each good or service offered by Plaintiff under the OZZFEST Mark in the United States.*

**Supplemental Response to Interrogatory No. 5:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 5.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 5 as follows: Live Nation Entertainment, Inc.; Sharon Osbourne; and Michael Guarracino.

**INTERROGATORY NO. 6:**

*Identify all Persons with knowledge or information Concerning whether there has been any interruption to the continuous use of the OZZFEST Mark in connection with any type of Plaintiff's goods or services.*

**Supplemental Response to Interrogatory No. 6:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 6 as follows: Sharon Osbourne, and Michael Guarracino.

**INTERROGATORY NO. 7:**

*Identify all Persons with knowledge or information Concerning the demographics or characteristics of actual and target customers of the goods and services marketed and sold by Plaintiff under OZZFEST Mark in the United States.*

**Supplemental Response to Interrogatory No. 7:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 7.  Subject to, and without waiving, the General and Specific

Objections asserted herein, Plaintiff responds to Interrogatory No. 7 as follows: Live Nation Entertainment, Inc., and Michael Guarracino.

**INTERROGATORY NO. 8:**

*Identify all Persons with knowledge or information Concerning any Market Research conducted by Plaintiff or any similar action on its behalf related to the OZZFEST Mark.*

**Response to Interrogatory No. 8:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 8.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 8 as follows: Live Nation Entertainment, Inc.

**INTERROGATORY NO. 9:**

*Identify all Persons most knowledgeable regarding all past and present plans to use or promote the OZZFEST Mark.*

**Supplemental Response to Interrogatory No. 9:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 9.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 9 as follows: Live Nation Entertainment, Inc.; Sharon Osbourne; and Michael Guarracino.

**INTERROGATORY NO. 10:**

*Identify all Persons with knowledge or information Concerning any instance of actual confusion between Plaintiff and Defendants arising from Ozy Media's use of the OZY FEST Mark.*

**Response to Interrogatory No. 10:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 10.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 10 as follows: anyone who read the 2016 *People* Magazine article quoted in the Complaint in this lawsuit.

**INTERROGATORY NO. 11:**

*Identify all Persons with knowledge or information Concerning the circumstances under which Plaintiff first became aware of Ozy Media and its use of the OZY FEST Mark.*

**Response to Interrogatory No. 11:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 11.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 11 as follows: Michael Guarracino.

**INTERROGATORY NO. 12:**

*Identify all Persons with knowledge or information Concerning Plaintiff's enforcement of Plaintiff's rights in the OZZFEST Mark, including all objections made by Plaintiff and all legal proceedings instituted by Plaintiff.*

**Response to Interrogatory No. 12:**

Plaintiff asserts the Absence of Control, Ambiguity, and Undue Burden Objections to Interrogatory No. 12.  Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 12  as follows: there have been no such objections or legal proceedings aside from the present action.

**INTERROGATORY NO. 13:**

*Set forth in detail each category of damage Plaintiff claims to have incurred arising from the acts of Defendants complained of in its Complaint, including the computation of the amount of damages Plaintiff claims to have incurred for each category.*

**Response to Interrogatory No. 13:**

Plaintiff asserts the Absence of Control, Ambiguity, Undue Burden, and Privilege Objections to Interrogatory No. 13. Subject to, and without waiving, the General and Specific Objections asserted herein, Plaintiff responds to Interrogatory No. 13 as follows: Plaintiff seeks an award of its damages, and Defendants' profits, in this action. Given the infancy of this proceeding, Plaintiff has not yet calculated either category of damages. Accordingly, Plaintiff will supplement this response to include a computation of each category of damages as discovery proceeds in this action.

Dated:  April 4, 2018
        New York, New York                    Respectfully submitted,

                                              */s/ Howard J. Shire*
                                              Howard J. Shire
                                              Jonathan W. Thomas
                                              HUNTON ANDREWS KURTH LLP
                                              One Broadway
                                              New York, New York 10004
                                              Tel.: (212) 425-7200
                                              Fax: (212) 425-5288
                                              Email: hshire@kenyon.com
                                              Email: jthomas@kenyon.com

                                              *Attorneys for Plaintiff*
                                              *Monowise Limited*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 4, 2018, I served a true and correct copy of the foregoing document, titled *Plaintiff Monowise Limited's Supplemental Responses and Objections to Defendants' First Set of Interrogatories Pursuant to Fed. R. Civ. P. 33*, via electronic mail, upon the following counsel of record for Defendants:

> Tonya Ouellette Klausner, Esq.
> Uzezi Abugo, Esq.
> WILSON SONSINI GOODRICH & ROSATI
> 1301 Avenue of the Americas, 40th Floor
> New York, New York 10019
> tklausner@wsgr.com
> uabugo@wsgr.com

> > */s/ Jonathan W. Thomas*
> > Jonathan W. Thomas
> >
> > *Attorney for Plaintiff*
> > *Monowise Limited*

10

# EXHIBIT 4

**Thomas, Jonathan**

| | |
|---|---|
| **From:** | Shire, Howard |
| **Sent:** | Monday, April 02, 2018 12:39 AM |
| **To:** | 'Klausner, Tonia' |
| **Cc:** | Abugo, Uzezi; Thomas, Jonathan; Holm, Peter |
| **Subject:** | RE: Deposition notices |

Tonia,

Your email misses the point.  You and I had agreed that the only depositions to be taken in connection with the preliminary injunction motion were one 30(b)(6) deposition of the plaintiff, and one possible 30(b)(6) deposition of defendant Ozy Media Inc., which we might decide to take after reviewing your opposition papers.  Please let me know the source of the information in the second sentence of your email; in particular, who has "repeatedly" made these statements to you?

In any event, Ms. Osbourne is not available on April 11.  I would have mentioned this in my email of March 30, but at the time I sent that email I had no idea that you might want to depose her on that day.

I suggest keeping the 30(b)(6) deposition on April 12, as presently noticed, but if you want to move it to April 11, I will see if the witness is available.  I appreciate your willingness to hold it at our office.

Regards,

Howard

**From:** Klausner, Tonia [mailto:tklausner@wsgr.com]
**Sent:** Saturday, March 31, 2018 5:00 PM
**To:** Shire, Howard
**Cc:** Abugo, Uzezi; Thomas, Jonathan; Holm, Peter
**Subject:** RE: Deposition notices

Howard,

We were surprised that Ms. Osbourne was not your declarant in support of your motion for preliminary injunction.  We have repeatedly been told that OZZFEST is her brainchild, and that she is the decision-maker for all things OZZFEST.  She also is the only Monowise witness identified in response to Defendants' interrogatories seeking the identities of persons with knowledge of the issues relevant to the claims and defenses.  For those reasons we had assumed Ms. Osbourne would be the 30(b)(6) witness.  Given she is the only one at the company identified as having relevant knowledge, we believe it is essential that we obtain her testimony in defending against  Monowise's motion.

We are willing to hold the deposition at your office and to move both depositions to April 11.  We will serve amended deposition notice on Monday.

I have reached out to my client about availability on April 18 and the preferred location for a 30(b)(6) deposition of Ozy Media and will let you know when I hear back.

As a reminder I will be in Europe starting tomorrow and will be off email for extended periods of time.  Uzezi will be in the office and I've also added my colleague Peter Holm to this email chain in case you need to reach someone in connection with this matter in my absence.

1

Regards,
Tonia

---

**From:** Shire, Howard [mailto:HShire@andrewskurthkenyon.com]
**Sent:** Friday, March 30, 2018 2:01 PM
**To:** Klausner, Tonia
**Cc:** Abugo, Uzezi; Thomas, Jonathan
**Subject:** Deposition notices

Tonia,

We were surprised to receive your deposition notice yesterday afternoon for Sharon Osbourne.  The parties had previously agreed that each side would take only a Rule 30(b) (6) deposition of the other in connection with the preliminary injunction motion.  There had been no discussion of any other depositions with respect to the motion.  So this deposition would be contrary to our agreement.  In any event, Ms Osbourne is not available on April 12, since he has a prior business obligation that day.  We also do not see any need for Ms. Osbourne to be deposed at this time, since Monowise is not relying on her testimony in connection with the preliminary injunction motion and, in accordance with our agreement, we will be providing a Rule 30(b)(6) witness on April 12.  Please withdraw your deposition notice for her.

We had also agreed that the 30(b)(6) depositions would take place at the respective offices of counsel defending the depositions.  So the 30(b)(6) deposition on April 12 should take place at my firm's offices.  As we previously agreed, plaintiff has the option to take a 30(b)(6) deposition of your client, which we would decide after we review your opposition papers.  We will inform you about this deposition on April 16.  Given the revised briefing schedule set by the court, I suggest that we tentatively set aside April 18 as the date of this deposition, which would take place at your firm's office.  Please let me know if this deposition will occur at your office in New York or California.

Regards,

Howard

Confidentiality Notice: The information contained in this email and any attachments to it may be legally privileged and include confidential information intended only for the recipient(s) identified above. If you are not one of those intended

recipients, you are hereby notified that any dissemination, distribution or copying of this email or its attachments is strictly prohibited. If you have received this email in error, please notify the sender of that fact by return email and permanently delete the email and any attachments to it immediately. Please do not retain, copy or use this email or its attachments for any purpose, nor disclose all or any part of its contents to any other person. Andrews Kurth Kenyon LLP operates as a Texas limited liability partnership. Andrews Kurth Kenyon DMCC is registered and licensed as a Free Zone company under the rules and regulations of DMCCA. Andrews Kurth Kenyon (UK) LLP is authorized and regulated by the Solicitors Regulation Authority of England and Wales (SRA Registration No.598542). Thank you.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.